

# COMMON PLEAS, *Philadelphia* County.*

# *June* Term, 1784.

## M'CARTY *verfus* NIXON *et al.*

THIS action was commenced returnable to the enfuing term, and now, *Auguft* 6th, previous to the *return* of the *writ*, *the plaintiff* moves for a fpecial court, under the new act, for granting fpecial courts *to plaintiffs.*—*Lewis* and *Ingerfol* for the plaintiff—*Wilfon* and *Wilcocks* for the defendant.

THE COURT denied the motion, the defendant not being in court, nor the action depending for this purpofe, till bail filed, or an appearance entered.

*Ingerfol* in arguing on the expreffion in the laft act, " action depending," took this diftinction—Where the original writ is purchafed out of Chancery, the fuit cannot be faid to be depending until the return ; becaufe the writ gives the jurifdiction, and before the return, the court does not know the caufe.—This is the cafe

in

* As the following cafe may give fome fatisfaction to our fifter ftates, I hope the infertion of it here, will not be deemed an improper deviation from my intention, to confine the reports of decifions in the *Common Pleas*, to thofe which have occurred fince the appointment of Mr. *Prefident* SHIPPEN :—particularly, as I have reafon to believe, that the principle of this adjudication, met with the approbation of all the judges of the *Supreme Court*.

Common Pleas, *Philadelphia* County.
*September* Term, 1781.
Simon Nathan *verfus* the Commonwealth of Virginia.
A foreign attachment was iffued againft the commonwealth of Virginia, at the fuit of Simon Nathan : and a quantity of cloathing, imported from France, belonging

1784.  in the Common Pleas in England—But where the original writ
issues out of the court, returnable into the same court, as was the
cafe

longing to that state, was attached in Philadelphia. The delegates in Congress
from Virginia, conceiving this a violation of the laws of nations, applied to the
supreme executive council of Pennsylvania, by whom the sheriff was ordered to
give up the goods.

The council for the plaintiff, finding that the sheriff suppressed the writ, and
made no return of his proceedings, obtained, September 20, 1781, a rule that
the sheriff should return the writ, unless cause was shewn.

They contended that the sheriff was a ministerial officer; that he could not dis-
pute the authority of the court out of which the writ issues, but was bound to ex-
ecute and return it at his own peril. 6 Co. 54.

That those cases in England, where the sheriff was not compelled to return
writs issued against ambassadors or their retinue, depended upon the stat. 7 Ann.
c. 12. which did not extend to this state

The *Attorney General*, on the part of the sheriff, and by direction of the supreme
executive council, shewed cause, and prayed that the rule might be discharged.

He premised, that though the several states, which form our federal republic,
had, by the confederation, ceded many of the prerogatives of sovereignty to the
United States, yet these voluntary engagements did not injure their independence
on each other; but that each was a sovereign, " with every power, jurisdiction,
and right, not expressly given up."

He then laid down two positions. First: that every kind of process, issued
against a sovereign, is a violation of the laws of nations; and is in itself null and
void. Secondly: that a sheriff cannot be compelled to serve or return a void writ.

I. The first point he endeavoured to prove, by considering, first, the nature of so-
vereignty: and, secondly, the rules of law, relative to process issued against am-
bassadors, the representatives of sovereigns.

He said, that all sovereigns are in a state of equality and independence, exempt
from each other's jurisdiction, and accountable to no power on earth, unless with
their own consent.

That sovereigns, with regard to each other, were always considered as indivi-
duals in a state of nature, where all enjoy the same prerogatives, where there
could be no subordination to a supreme authority, nor any judge to define their
rights, or redress their wrongs.

That all jurisdiction implies superiority over the party, and authority in the
judge to execute his decrees: but there could be no superiority, where there was
a perfect equality—no authority, where there was an entire independence.

That the king of England, as sovereign of the nation, is said to be independent
of all, and subject to no one but God: and his crown is stiled imperial, on pur-
pose to assert that he owes no kind of subjection to any potentate on earth. No
compulsory action can be brought against him, even in his own courts.

That a sovereign, when in a foreign country, is always considered by civilized
nations, as exempt from its jurisdiction, privileged from arrests, and not subject
to its laws.

Hence this inference was drawn, that the court having no jurisdiction over Vir-
ginia, all its process against that state, must be *coram non judice*, and consequently
void. 1 *Vatt.* p. 2. 133. 2. *Vatt.* 158. 1 *Blackst.* 141. 5 *Bac.* 450.

It was then observed, that there being no instance in our law books, of any pro-
cess against a sovereign, it was proper to consider the rules of law relative to pro-
cess against their representatives.

The statute of Ann was read, with the history of the outrage that gave birth to
it; which act declares that all process against the person, or goods, or domestics
of an ambassador shall be null and void, and all concerned in issuing or serving it,
should be punished as infractors of the laws of nations.

That this statute was not introductory of any rule, but barely declaratory of the
laws of nations. That there was nothing new in it, except the clause prescribing
a summary mode of punishment. That it was a part of the common law of the
land before, and consequently extended to Pennsylvania. 4 *Blackst.* 67. 3 *Burr.*
1480. 4 *Burr.* 2016.

Hence

cafe in the ftar-chamber, and is the cafe in this court, there it is *lis pendens* from the purchafe of the writ—To this purpofe he cited

1784.

Hence it was concluded, that if procefs againft an ambaffador be null and void, *a fortiori*, fhall it be void if iffued againft a fovereign.

That the true reafon of the minifter's exemption from procefs is the independence and fovereignty of the perfon he reprefents. And although by engaging in trade, he may fo far diveft himfelf of his public character, as to fubject thefe goods to attachment, yet in every cafe where he reprefents his ma ter, his property is facred. But a fovereign cannot fubject himfelf by implication : he muft do it exprefsly.

That though the goods of a fovereign, as well as of an individual, might be liable for freight, or duties, or fubject to forfeiture ; yet in thofe cafes, there was a lien on the goods, they were anfwerable, and the procefs was *in rem :* in this cafe, it was *in perfonam ;* and the goods were attached merely to compel the party's appearance to anfwer the plaintiff's demand. And no fovereign would fubmit to the indignity of doing this.

Hence it was inferred that the writ was a mere nullity.

II. Upon the fecond point, authorities were read to explain the cafe produced by the plaintiff's council, and to fhew a diftinction between an erroneous and a void writ. That the fheriff was bound to execute and return the writ, although erroneous, if the court had jurifdiction. But when the court had no jurifdiction, the writ was void, and the fheriff was a trefpaffer if he dared to obey it ; a void authority being the fame as none. That in England, the fheriffs were never obliged to return a writ, if upon fhewing caufe, it appeared that the defendant was a public minifter, or one of his domeftics. 5 *Bac.* 431. *Salk.* 700. 2 *Barnes.* 1 *Wils.* 20.

That fuppreffing the writ was not making the fheriff judge, becaufe he was obliged to affign a reafon for fo doing : and on the legality of that reafon the court was now to determine.

He added, that if the fheriff had attached the goods, he was liable to punifhment, and to compel him to return his proceedings, was to oblige him to put his offence upon record, and to furnifh teftimony againft himfelf.

He finally obferved, that the writ was void, or it was not. If void, the fheriff need pay no attention to it : if not void, he was obliged to execute it at all events ; and if fo, thefe inconveniencies would follow. That any difaffected perfon, who happened to be a creditor of the United States, might injure our public defence, and retard or ruin the operations of a campaign ; that he might iffue an attachment againft the cannon of General Wafhington, or feize the public money defigned for the payment of his army. That the ftates united or feveral, would never fubmit to put in fpecial bail (which muft be done to prevent judgment) and to anfwer before the tribunal of a fifter ftate.

That the plaintiff was under no peculiar inconvenience. Every creditor of this ftate or of the United States lay under the fame. If his demand was juft, Virginia would, upon application, do what was right ; if not, and flagrant injuftice was done him, he might (if a fubject of this ftate, and entitled to its protection) complain to the executive power of Pennfylvania.

He concluded with obferving on the importance of fuppreffing fuch meafures as the prefent, at their firft appearance, and of preferving the rights of fovereign ftates inviolate—and prayed that the rule might be difcharged.

The counfel for the plaintiff infifted, that though Virginia was a fovereign ftate, yet this ought not to exempt her property in every cafe from the laws and jurifdiction of another ftate. That fovereignty fhould never be made a plea in bar of juftice : and that the true idea of prerogative, was the power of doing good, and not, as it had fometimes been expreffed, " the divine right of doing ill."

That every perfon, and all property within this ftate, was fubject to its jurifdiction, by fo being within it, except a fovereign power, and the reprefentative of a fovereign power, with his domeftics and effects, which he holds as reprefentative.

That if an ambaffador engages in trade, his property fo engaged is liable to attachment, *Vat B.* IV *fect.* 114. and if a fovereign ftate turns merchant, and draws or accepts bills of exchange, its property ought in like manner to be fubject

cited 15 *Vin. Abr.* 127. *pl.* 3. 5. 6. 8. *Cro. Eliz.* 675. 5 *Rep.* 47. 48. *a.* 1 *Vern.* 318. 3 *Black. Comm.* 316. See 10 *Vin. Abr.* 498. *pl.*

HUNTER'S

to the law merchant, and anfwerable in the ftate where it happens to be importe.

That fovereignty is better reprefented by perfons than things : and as any or the citizens of Virginia would be amenable to the jurifdiction of this ftate, if th were to come within its bounds, fo there is no reafon why property brought hei fhould not be attached as well as the citizen arrefted.

That one fovereign may lay duties upon the goods of another : and this appear to have been the fenfe of Congrefs, by their exprefsly ftipulating in the article confederation, that no duties fhould be laid by one ftate, on the property of anothe.

That the goods, which were attached, were certainly liable for their freight fo if they had been imported contrary to law, they were fubject to forfeiture : pro cefs againft them might iffue out of this court, and jurifdiction over them be ex ercifed, the fovereignty of Virginia notwithftanding.

That if a veffel belonging to Virginia, fhould be taken, as prize retaken, and libelled here, Virginia muft fubmit her claim to the decifion of the admiralty of Pennfylvania, and could not claim an exemption, on account of her fovereignty.

That a fovereign ftate may wave its rights - and by the very act of importing merchandize, it fubjects itfelf to the jurifdiction of the country.

That all property in this ftate is under the protection of the government, an therefore fhould be anfwerable in its turn, and amenable to its laws.

That the ftatute of Ann, though declaratory, is only declaratory of the ideas which that parliament entertained of the laws of nations. Thefe were often er roneous, and could not be binding on us.

That whatever might be the cafe with regard to foreign minifters, by the arti cles of confederation, the delegates from Virginia were privileged only in their perfons, and not in their goods : and as they reprefent the ftate, it was to be pre fumed, they enjoy every exemption that their fovereign expected or claimed.

They faid, that whether Virginia was fubject to, or exempt from, the jurif diction of this ftate, in the prefent inftance, was not the point now in queftion : it was only, whether the fheriff fhould or fhould not obey the command of the court.

That by the writ, he was directed to return it to the court, and he was not to withhold the procefs in contempt of this order, and to ftifle the proceedings in their birth.

That the fheriff was to act under the judgment of the court, and if he had any doubt about the validity of the writ, he ought to return it. Then the court might, if caufe was fhewn, quafh it as illegal.

That his not being obliged to return procefs againft ambaffadors was owing to the ftatute of Ann : and this exemption was fingular, and not to be extended here.

That though a writ might be void, where the court had no jurifdiction of the caufe, or iffued a writ, which they had no authority to iffue ; yet the caufe here was trefpafs upon the cafe, of which the court may hold plea, and the procefs was a foreign attachment, which they certainly had authority to iffue.

That to fuffer the fheriff to fupprefs writs at pleafure, was eftablifhing a dan gerous precedent, which in future would be greatly abufed.

That the queftions upon which this caufe depended, were important, and de ferved the fulleft confideration : and that an appeal from one tribunal to another, was the right and the fecurity of the fubject. But if the writ was now to be fupprefled, there could be no record to be removed, and the plaintiff was left without remedy.

They finally obferved, that this mode of applying to a court of judicature, to decide on the juftice of the plaintiff's demand, was every way preferable to that propofed by the attorney general, of fending him to complain to the executive power, who could give him no redrefs, but by appealing to arms, and involving the ftate in a war.

They therefore prayed, that the rule might be made abfolute.

THE COURT held the matter fome days under advifement—and at their next meeting, THE PRESIDENT delivered it as the judgment of the court .

" That the rule made upon the fheriff, to return the writ iffued againft the commonwealth of Virginia, at the fuit of Simon Nathan, fhould be difcharged."