John J. TWOROG

v.

Dolores M. TWOROG.

Nos. 2009–307–Appeal, 2011–95–Appeal.

Supreme Court of Rhode Island.

July 2, 2012.

John J. Tworog, West Warwick, Pro se.

William J. Burke, Esq., Pawtucket, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Before this Court are two consolidated matters in which the plaintiff, John J. Tworog (John), appeals from two Family Court orders pertaining to his divorce proceedings with the defendant, Dolores M. Tworog (Dolores).[1] John first appeals an order denying his motion to reopen the final judgment of divorce, alleging that the judgment was based on mistakes of fact and fraud. He also appeals an order finding him in contempt of court for not complying with the final judgment of divorce.

This case came before the Supreme Court on March 28, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the orders of the Family Court.

## I

### Facts and Travel

The travel of this case begins, ironically, on Valentine's Day, February 14, 2008, when John, a licensed attorney in Rhode Island, filed for divorce against Dolores in

---

1. In this opinion, we refer to the parties as John and Dolores. This is for the purpose of clarity only, and we intend no disrespect by using their first names.

Kent County Family Court.[2] A divorce hearing took place before a justice of the Family Court on May 12, 2008, where both parties appeared *pro se*.[3] A final judgment of divorce, which was prepared by John, was entered on August 28, 2008, wherein John was temporarily permitted to maintain possession of the marital home located at 209 East Shore Drive in the Town of Coventry (the real estate). In this regard, paragraph three of the final judgment is particularly relevant and states that:

> "[John] shall have possession of the real [estate] * * * for the next two and one half years for the period beginning May 12, 2008. [John] shall be responsible to pay the mortgage and the household bills during that period."[4]

According to the final judgment, John had the option of purchasing Dolores's share of the real estate at any time during the two-and-one-half-year period. Furthermore, paragraph eight of the final judgment provides that John "waives any interest in [Dolores's] Civil Service Retirement Plan." Additionally, paragraph ten states that "[a]ll other property not mentioned above will be awarded to the party who has possession of it."

On May 11, 2009, Dolores filed a motion for relief after final judgment, seeking a court-ordered sale of the real estate because John had failed to make the mortgage payments and other household bills. In response, John filed a motion for relief from judgment and to reopen judgment, alleging that the prior "agreement of the parties, as evidenced by the Final Judgment [of divorce] contain[ed] terms that were based on * * * mistakes of fact(s), inadvertence, misrepresentation(s), and/or fraud, etc. as it relates to the disclosure and nature of certain assets held by [Dolores] through her employer * * *." After several additional filings by both parties,[5] the motions were heard on September 11, 2009, in Washington County Family Court before the same Family Court justice who presided over the prior divorce hearing.[6]

At the hearing, Dolores, who had retained counsel, asserted that John should be held in contempt for failing to pay the bills associated with the real estate and that the property should be sold. John, still *pro se*, acknowledged that he was "behind" on the mortgage payments, but spent most of his time arguing in support of his motion to reopen the final judgment of divorce. In particular, John maintained that, before the divorce became final, Dolores had represented to him that her 401K plan[7] "was a small amount of mon-

---

2. The record is silent as to the length of the marriage or whether it produced any children.

3. We note the trend of referring to *pro se* litigants as "self-represented litigants." *See, e.g., Wooldridge v. Wooldridge,* 940 A.2d 1082, 1085 (Me.2008); *Matthews v. Commissioner of Correction,* 449 Mass. 1021, 868 N.E.2d 602, 604, 605 n. 5 (2007).

4. The September 11, 2009 hearing transcript indicates that, in fact, two mortgages encumbered the real estate.

5. Dolores filed two additional motions—an emergency motion seeking to list the property for sale and a motion to adjudge John in contempt for not paying the mortgage and household bills. John filed another motion for relief, asserting that Dolores refused to complete paperwork necessary for him to obtain a loan modification for the mortgage.

6. The Acting Chief Judge of the Family Court transferred the case to Washington County because the hearing justice had since been reassigned to that location.

7. In his written statements to this Court, John describes Dolores's 401K plan as a "Government Thrift plan" and a "Thrift Savings Plan." For the purposes of this opinion, we shall refer to this asset as Dolores's 401K plan.

ey." Based on that representation, he had made "certain other agreements with her" and took no steps "as far as trying to get a share of the 401[K] plan[.]" He contended that only after the divorce was final did he learn that Dolores's 401K plan "had $80,000 in [it] that she had not disclosed to [him]." John argued that, had he known the correct value of Dolores's 401K plan, he would not have entered into the agreement that ultimately became the final judgment of divorce.

Emphasizing that John had ample opportunity to file discovery and request from Dolores a DR–6 form[8] prior to the final judgment, the hearing justice signed an order denying John's motion to reopen on September 23, 2009. The court's order also mandated that John become current on all outstanding obligations related to the real estate by December 11, 2009, and required Dolores to complete application papers for the purpose of refinancing the mortgages on the real estate.

The next day, John filed a notice of appeal regarding this decision. The appeal was docketed in this Court on October 16, 2009, and the parties filed pre-briefing statements in November 2009.

The record indicates that John was unable to become current on all of his outstanding obligations by the December 11, 2009 deadline. Accordingly, Dolores filed a motion to remand the matter back to the Family Court. This Court entered an order remanding the case on April 9, 2010.

With the matter back in Family Court, Dolores, on April 26, 2010, filed a motion to adjudge John in contempt for exhausting a $6,000 line of credit from Citizens Bank that was established during the marriage in both parties' names. Dolores asserted that she first became aware of

John's use of this money when the bank contacted her for payment, and she further asserted that her credit rating was "damaged * * * by reason of [John's] failure to pay this particular obligation." On May 17, 2010, John filed a motion to adjudge Dolores in contempt for "refus[ing] to complete the form or submit the documentation required * * * for a loan modification of the mortgage on the [real estate] * * *."

Another hearing transpired before the same Family Court justice on May 24, 2010, at which time both parties testified and introduced numerous exhibits. Dolores, again represented by counsel, elicited from John during direct examination that he was in arrears on both mortgages and that he had indeed withdrawn $6,000 from the Citizens Bank line of credit in December 2009. In response, John, still self-represented, asserted that, at the time he borrowed against the line of credit, he was unaware that Dolores's name was also on the account and that the payments on the line of credit had, at the time of the hearing, been brought up to date. He argued further that Dolores was in contempt of the court's September 23, 2009 order for refusing to complete the necessary mortgage paperwork.

After considering the parties' arguments, the hearing justice summarized his findings. He found that, in regard to the first mortgage, John had not made a single payment in the twelve months prior to the hearing. He also found that John had not made a payment on the second mortgage for approximately eight months. The hearing justice also determined that John "further encumbered the [real estate] by activating a dormant line of credit" in December 2009. Concerning John's credibility, the hearing justice found that "his an-

---

8. A DR–6 is a standardized form used by parties to a divorce proceeding to provide a statement of assets, liabilities, income, and expenses.

swers to the questions posed by [opposing counsel] were vague, confusing, [and] double talk. All in an effort to * * * evade the truth of what took place here." He also viewed the real estate to be in "serious danger of foreclosure."

In an order entered on June 16, 2010, the hearing justice granted Dolores's motion by finding John in contempt for "further encumbering" the real estate and for his actions involving the $6,000 line of credit. The hearing justice also appointed a commissioner to oversee the sale of the real estate, although he declined to remove John from the real estate at that time. The hearing justice further found that Dolores had complied with her obligation under the order of September 23, 2009. Consequently, John filed a second notice of appeal on July 6, 2010. This second appeal was docketed in this Court on July 29, 2011. The two pending appeals were subsequently consolidated for oral argument.

## II

### Issues on Appeal

There are two issues presented before this Court: first, whether the hearing justice erred in denying John's motion to reopen the final judgment of divorce because of fraud, misrepresentation, or other misconduct by Dolores in regard to her 401K plan; and second, whether the hearing justice erred in finding John in contempt of the September 23, 2009 order of the Family Court.

## III

### Standard of Review

■ "This Court reviews a trial justice's decision in a divorce proceeding with deference, and '[w]e do not disturb the trial justice's findings of fact unless it can be shown that he or she has overlooked or misconceived relevant and material evidence or was otherwise clearly wrong.'" *Esposito v. Esposito*, 38 A.3d 1, 4 (R.I. 2012) (quoting *Curry v. Curry*, 987 A.2d 233, 237–38 (R.I.2010)). "The denial of a motion to vacate or modify a judgment is within the sound discretion of the trial justice and will not be reversed on appeal absent a showing of abuse of discretion or other error of law." *Flynn v. Al-Amir*, 811 A.2d 1146, 1150 (R.I.2002) (quoting *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I. 2001)). Furthermore, "[a] finding of contempt is within the sound discretion of the [hearing] justice." *Ayriyan v. Ayriyan*, 994 A.2d 1207, 1215 (R.I.2010) (quoting *State v. Lead Industries Association, Inc.*, 951 A.2d 428, 464 (R.I.2008)). Accordingly, "we 'will only overturn such findings [of contempt] where they are clearly wrong.'" *Id.* at 1216 (quoting *Nardone v. Ritacco*, 936 A.2d 200, 204 (R.I.2007)).

## IV

### Discussion

### A

### Motion to Reopen

■ The first issue on appeal is whether the hearing justice erred in denying John's motion to reopen the final judgment of divorce because of fraud, misrepresentation, or other misconduct by Dolores. In his submitted statements, John argues that he is entitled to relief under Rule 60(b) of the Family Court Rules of Procedure for Domestic Relations[9] because Do-

9. Rule 60(b) of the Family Court Rules of Procedure for Domestic Relations states:

"(b) * * *[T]he court may relieve a party * * * from a final judgment, order, or proceeding for the following reasons: * * * (3) fraud * * *, misrepresentation, or other misconduct of an adverse party; * * * or (6) any other reason justifying relief from

lores "acted fraudulently and coerced [him] into making the agreement that is embodied in the [f]inal [j]udgment of [d]ivorce between the parties." John makes the same arguments on appeal that he presented before the Family Court. In particular, he asserts that when he and Dolores discussed division of the marital assets in anticipation of the prior divorce hearing, he specifically asked Dolores whether she had any money in her 401K plan. According to John, "she replied that there had been a small amount but that she had cashed it in and the money had been spent." John maintains that, based on this representation, he "did not pursue any interest in the plan." While acknowledging that Dolores did not submit a DR–6 form at any point prior to finalization of the divorce, he explains that he "did not object to the lack of a DR–6 because [Dolores] had made a representation to him as to the nature and amount of her assets." John considers this misrepresentation by Dolores as sufficient justification to "overturn the order of the Family Court."

In response, Dolores avers that John has not met his burden relative to his motion to reopen the final judgment. She points out that John never propounded any discovery nor requested her to file any financial information before the final judgment of divorce was entered. Dolores also notes that paragraph ten of the final judgment stated that "[a]ll other property not mentioned above will be awarded to the party who has possession of it."

In his denial of John's motion to reopen the final judgment, the hearing justice found that John "filed no interrogatories, requested no other discovery, and did not require or seek that [Dolores] prepare and provide any financial DR–6 [f]orm to the [c]ourt." The hearing justice further found that it was John who "prepared and caused to be entered and approved" the final judgment of divorce. Moreover, the hearing justice determined that John failed to provide any evidence supporting his claim that Dolores committed fraud and misrepresentation that would justify reopening the final judgment. In deferring to the hearing justice's findings of fact in this case, as we must, we discern no abuse of discretion on his part and affirm the Family Court in its denial of John's motion to reopen the final judgment of divorce.[10]

## B

### Contempt

■ The second issue on appeal is John's contention that the hearing justice erred by finding him in contempt of a prior order of the Family Court. John focuses his appeal on the portion of the June 16, 2010 order that finds him "in contempt of this [c]ourt by continuing to further encumber" the real estate. He asserts that the hearing justice "ma[de] an incontrovertible mistake of fact" because the $6,000 line of credit was unsecured and therefore did not further encumber the real estate. John maintains on appeal

the operation of the judgment. * * * This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."

10. In his argument before the hearing justice and likewise on appeal, John invoked this Court's holding in *Gorman v. Gorman*, 883 A.2d 732 (R.I.2005), in which we held that the

Family Court "had the power to *review* [a] [p]roperty [s]ettlement [a]greement and to withdraw its approval of the [a]greement when it determined that the [a]greement was inequitable." *Id.* at 741. In light of our holding that John's failure to request either discovery or a DR–6 form was fatal to his motion to reopen the final judgment of divorce, we need not address the applicability of *Gorman* in the present matter.

that, although he did not use the available $6,000 to pay toward the mortgages, he did use the line of credit to pay other outstanding bills.

In response, Dolores maintains that the hearing justice properly adjudged John in contempt based on John's failure to pay the mortgages and his actions regarding the line of credit.[11],[12]

A review of the record in this case supports the hearing justice's finding of contempt. Pursuant to the August 28, 2008 final judgment, John was obligated to stay current on the mortgages and other household bills—which he failed to do. The September 23, 2009 order gave John approximately three months to become current on all real estate obligations—which he also failed to do. Moreover, John exhausted the $6,000 line of credit without making any payments towards either mortgage on the real estate. Because John's non-payment of the mortgages was contemptuous of the Family Court's August 28, 2008 and September 23, 2009 orders, any error in the hearing justice's finding that the line of credit "further encumbered" the real estate is harmless.

The hearing justice also found that John "would have [the Family Court] believe that he did not know that his [ex-]wife's name was on [the] line of credit," even though the exhibits at the hearing "clearly indicate[d]" that Dolores's name was on it. We particularly note the hearing justice's finding that John's testimony during the May 24, 2010 hearing "contained double talk to evade his own actions and to evade the truth of what took place." Exercising the appropriate deference to these findings of the hearing justice, we conclude that no abuse of discretion occurred, and the finding of contempt will not be disturbed.

## V

### Conclusion

For the reasons set forth in this opinion, we affirm the orders of the Family Court and remand the record to that tribunal.

**11.** Dolores also attacks John's appeal procedurally, citing G.L.1956 § 14–1–52(b). She asserts that John's direct appeal from the June 16, 2010 order adjudging him in contempt is improper and that review should have instead been sought by writ of certiorari. Section 14–1–52(b) states:

"(b) Every person aggrieved by any decree, judgment, order, decision, or verdict of the family court relating to modification of alimony or of child support, or a finding of contempt for failure to pay alimony or child support, may * * * seek review of questions of law in the [S]upreme [C]ourt by petition for writ of certiorari * * *."

The writ of certiorari requirement of § 14–1–52(b) only applies to a party attempting to appeal a Family Court decision relating to the modification of, or failure to pay, alimony or child support. Here, because the finding of contempt is not related to alimony or child support, § 14–1–52(b) is inapplicable. Furthermore, the plain language of § 14–1–52(a) provides that final orders of the Family Court other than those enumerated in subsection (b) are reviewable by appeal to this Court.

**12.** Dolores also argues on appeal that the June 16, 2010 order is interlocutory and not subject to review on appeal. On this issue, we hold that because the finding of contempt was made after a final judgment of divorce (entered on August 28, 2008), the matter is properly before this Court.