June 21, 2023

**Supreme Court**

No. 2021-19-Appeal.
(K 17-2597)

Donna DiDonato  :

v.  :

Germano DiDonato.  :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Donna DiDonato          :

v.                     :

Germano DiDonato.        :

Present:  Suttell, C.J., Goldberg, Robinson, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  In this divorce proceeding, the defendant, Germano DiDonato, appeals from the decision of the Family Court pending entry of final judgment.  The defendant argues that the trial justice erred in the determination and assignment of marital property by refusing to recognize the DiDonato Family Living Irrevocable Trust (the trust) and by distributing the following assets to the plaintiff, Donna DiDonato: (1) 50 percent of the defendant's pension; (2) 50 percent of the value of his certificates of deposit (CDs); (3) 50 percent of the appreciation in value of real property located at 14 By the Way Street, Warwick, Rhode Island (the marital domicile); and (4) 100 percent of the appreciation in value of real property located at 78 Delwood Road in Warwick, Rhode Island (78 Delwood).  The defendant also argues that the Family Court justice erred in sanctioning him $50,000.

- 1 -

Finally, the defendant maintains that the trial justice erred in ordering a $16,000 credit to plaintiff and used a "double standard" that disfavored him. For the following reasons, we affirm the decision of the Family Court.

**Facts and Procedural History**

The plaintiff and defendant married on August 5, 2000, and separated sixteen years later. The plaintiff initiated divorce proceedings on May 12, 2017, and defendant filed a counterclaim the following month. The parties each sought a divorce based on irreconcilable differences. Being fully self-sufficient, they both waived alimony, and the only issue in the underlying action was the determination and equitable distribution of marital assets.

The divorce proceeding was pending in the Family Court for three years, during which there were discovery disputes and detours to District Court as well as to this Court. Given the extensive history of the case, we briefly recount only the portions of the record that are relevant to our analysis of the alleged errors.

Throughout the proceedings below, defendant was not responsive to plaintiff's requests to identify marital assets and liabilities, leading her to seek court intervention under Rule 37 of the Family Court Rules of Domestic Relations Procedure. Over the course of the case, defendant filed five conflicting and incomplete financial disclosure forms (DR-6s), the first of which omitted disclosure of his pension, workers' compensation, CDs, and ownership of the marital domicile.

On June 26, 2018, the trial justice appointed a commissioner tasked with identifying the parties' assets, determining which assets were marital property, and assessing the value of the marital property. The trial justice ordered the parties to cooperate with the commissioner and to provide any information he requested.

The trial justice also issued multiple orders warning defendant that his failure to comply with previous orders or to provide information to the commissioner would result in sanctions. On October 29, 2018, the trial justice ordered defendant to provide the commissioner with requested documents and ordered him to pay $1,000 per day for each day thereafter that he remained in noncompliance. Despite these interventions, defendant's responses to the commissioner's requests continued to be untimely and incomplete. The commissioner eventually subpoenaed numerous financial institutions in Rhode Island and discovered multiple undisclosed accounts.

In addition to not disclosing assets, defendant withdrew funds after divorce proceedings began without providing notice to or receiving permission from the court. He withdrew $6,000 in cash on August 20, 2018, and wrote a check for $10,000 on September 25, 2018. The $10,000 check was payable to defendant's attorney.

On February 12, 2020, an eight-day trial commenced, during which the trial justice heard testimony from plaintiff, defendant, the commissioner, two appraisers, and others. We review the relevant testimony about the assets at issue on appeal.

The trial justice heard testimony about defendant's pension. The defendant began working as an analyst for the Department of Veterans Affairs (the VA) in 1977. Although defendant originally did not disclose his pension, the commissioner discovered that defendant participated in the civil service retirement system while employed at the VA. The defendant explained that he has been collecting workers' compensation since he was injured on the job in 2012, and that around the same time, he stopped contributing to his pension. Although he is eligible for retirement, defendant has no intention of retiring because he receives more money from workers' compensation than he would from his pension.

The defendant also testified about the trust, which he said he created in 2013. He identified several assets that were held in the trust, including CDs and the marital domicile.

The defendant testified that he funded the CDs with nonmarital funds. However, he made this claim for the first time during trial, prompting the trial justice to ask him to present documents to support this contention. When it became clear that defendant had not previously disclosed any details about the source of the funds for the CDs to anyone, the trial justice recalled the commissioner, who confirmed that defendant had not supplied, and that he had not otherwise uncovered, any information that supported defendant's claim that the CDs were nonmarital property.

With respect to the marital domicile, defendant testified that he purchased it the year before the parties married. Although the marital domicile was held in the trust at the time of the divorce, the trial justice found that defendant had "unfettered access to move assets in and out of the trust, which he did." Furthermore, he took out loans against the marital domicile, which he repaid with his personal funds instead of trust funds.

The plaintiff was never on the deed to the marital domicile, but she and defendant selected and moved into the house together. Upon moving into the house, plaintiff began paying defendant $700 per month, which she testified was for her half of the mortgage. She continued to pay $700 every month while she lived there, which was the entire duration of the marriage. She testified that, in addition to this monthly payment, she paid for the cable and telephone bill, purchased groceries, and contributed to the maintenance of the home. The defendant testified that the $700 monthly payment was not for the mortgage; rather, he maintained that it represented her share of monthly expenses.

Two appraisers testified about the value of the marital domicile. Susan Kelly, defendant's appraiser, testified that market conditions and market analysis alone accounted for the change in value of the marital domicile between 2000 and 2020. Stephanie Soscia, plaintiff's appraiser, opined that between 2000 and 2018 the value

of the property increased from $235,000 to $400,000 and there was no change in the value of the marital domicile from 2018 to 2020.

The trial justice also considered testimony about property located at 78 Delwood. The plaintiff testified that she owned 78 Delwood for approximately twelve years prior to the marriage. She was on the deed for the entirety of the marriage and never added defendant to the deed. During the marriage, she rented out 78 Delwood, and the rental income covered the mortgage, property upkeep, taxes, and insurance. Prior to the parties' separation, plaintiff remodeled 78 Delwood to update the kitchen and bathroom. The plaintiff inherited money from her mother and used some of the funds to cover the remodeling costs. However, defendant performed the remodeling and purchased some supplies, including the kitchen cabinets. Ms. Kelly testified that the value of 78 Delwood increased during the marriage. She considered the sale of comparable homes in the area and opined that the kitchen and bath remodeling did not cause the appreciation, which was caused solely by the change in the housing market.

On the last day of trial, defendant mentioned that he owned a timeshare in Florida. However, prior to trial he never disclosed his timeshare.

The trial justice issued a bench decision on April 16, 2020, followed by a written interlocutory decision pending entry of final judgment. The trial justice determined that plaintiff was entitled to 50 percent of defendant's VA pension; 50

percent of the value of defendant's more than ten CDs, many of which were discovered by the commissioner; 50 percent of the appreciation in value of the marital domicile; and 100 percent of the appreciation in value of 78 Delwood. The trial justice also sanctioned defendant $50,000. Lastly, the trial justice credited to plaintiff's share of the marital assets the $16,000 defendant withdrew from his accounts in August and September 2018 and ordered credit to plaintiff accordingly. The defendant filed a timely notice of appeal.

## Discussion

The defendant contests the trial justice's distribution of assets and imposition of sanctions. He also contests the trial justice's decision ordering him to credit $16,000 to plaintiff, as well as what he refers to as the trial justice's application of a "double standard."

We consider whether the trial justice erred in the determination and assignment of marital assets, and in the imposition of sanctions. We also consider whether the trial justice abused her discretion in ordering a $16,000 credit to plaintiff and by disfavoring him.

## Determination and Assignment of Marital Assets

This Court defers to the trial justice's findings of fact in divorce proceedings. *Boschetto v. Boschetto*, 224 A.3d 824, 828 (R.I. 2020). Unless our review reveals that the trial justice "misconceived the relevant evidence or was otherwise clearly

wrong[,]" we will not disturb the findings of fact. *Id*. (quoting *Vieira v. Hussein-Vieira*, 150 A.3d 611, 615 (R.I. 2016)). We otherwise review the trial justice's findings under the abuse of discretion standard. *Id*.

The trial justice must complete three steps when engaging in "the equitable distribution of property in a divorce action * * *." *Saltzman v. Saltzman*, 218 A.3d 551, 561 (R.I. 2019). The trial justice must "(1) determin[e] which assets are marital property; (2) consider[] the factors set forth in G.L. 1956 § 15-5-16.1(a); and (3) distribut[e] the property." *Id*. (quoting *McCulloch v. McCulloch*, 69 A.3d 810, 820 (R.I. 2013)).

The factors set forth in § 15-5-16.1(a) include: (1) the length of the marriage; (2) each party's contribution towards the acquisition, preservation, and appreciation of assets; (3) each party's homemaking contributions; (4) the health and age of the parties; (5) each party's income, occupation, and employability; (6) each party's opportunity for future acquisition of assets and income; (7) wasteful dissipation and/or encumbrance of assets; and (8) the conduct of the parties during the marriage. The trial justice need not "explicitly list his or her findings on each factor" so long as this Court can determine that the trial justice considered "all the necessary facts and statutory factors." *Sullivan v. Sullivan*, 249 A.3d 637, 644 (R.I. 2021) (quoting *Palin v. Palin*, 41 A.3d 248, 256 (R.I. 2012)).

- 8 -

In weighing the statutory factors, the trial justice is afforded discretion. *Stevenson v. Stevenson*, 511 A.2d 961, 963-64 (R.I. 1986). The trial justice has broad discretion to divide assets between the parties justly and fairly. *Sullivan*, 249 A.3d at 641.

The defendant challenges the determination and assignment of certain assets. He insists that the trial justice erred in determining that the marital estate included his pension, the CDs, and the appreciation in the value of the marital domicile, but that it did not include the appreciation in the value of 78 Delwood. We consider each of these assets in turn.

## A. Defendant's Pension

The defendant argues that the trial justice erred by finding that his pension was marital property and subject to equitable distribution. His argument here is twofold. First, he insists that the ruling is wrong because the pension is "nonexistent." Second, he argues that the trial justice did not consider any of the factors for distribution under § 15-5-16.1. We hold that the trial justice did not err in assigning as marital property the appreciation of defendant's pension.

The defendant's pension does in fact exist. He began working for the federal government in 1977, and, because of the commissioner's extensive efforts, we know that defendant participated in the civil service retirement system and that he accrued a pension up until 2012. Relevant case law is clear. Pension benefits earned and

- 9 -

accumulated during the marriage are marital property subject to equitable distribution. *See Bober v. Bober*, 92 A.3d 152, 165 (R.I. 2014).

The defendant is now eligible to collect his pension, though he chooses to continue collecting workers' compensation instead. However, "one spouse should not be allowed to defeat the other spouse's interest in an asset earned and accumulated during the marriage by invoking a condition wholly within his or her control." *Bober*, 92 A.3d at 165 (quoting *Allard v. Allard*, 708 A.2d 554, 558 (R.I. 1998)). It would be "inequitable" if the court were "to allow the husband to unilaterally deprive the wife of her share of the pension by delaying his retirement until some uncertain date in the future when he might decide to retire." *Janson v. Janson*, 773 A.2d 901, 904 (R.I. 2001) (internal quotation marks omitted). Thus, defendant's unilateral decision regarding his retirement does not magically erase his pension from existence. Furthermore, our review of the record demonstrates that the trial justice considered the relevant facts and factors under § 15-5-16.1. Prior to assigning the marital property, the trial justice noted the need to apply the § 15-5-16.1 factors in reaching her decision, and she considered the contributions each party made to their respective retirement accounts during the marriage.

## B. Certificates of Deposit

The defendant argues that the trial justice erroneously determined that the more than ten CDs, culminating in a total value of $202,942.45, were marital

property. Specifically, he argues that the trial justice overlooked defendant's testimony and evidence that plaintiff did not contribute any money to the CDs and that the trust owned the CDs. He also argues that the trial justice erroneously distributed 50 percent of value of the CDs to plaintiff.

We conclude that the trial justice did not err because the record supports the finding that the CDs were marital property and that the trial justice acted within the bounds of her discretion in distributing to plaintiff 50 percent of the total value at the time of trial. The commissioner testified about the lengths he had to go to in order to discover the CDs that defendant repeatedly failed to disclose. The defendant failed to establish that he opened the CDs with nonmarital funds; and in fact, defendant did not make any argument that the CDs were nonmarital property prior to his testimony at trial. While defendant contends that the trial justice overlooked or ignored his evidence, that is not the case. He was unable to provide any documents supporting his claim that the CDs existed prior to the marriage, and the commissioner uncovered no evidence to support a finding that the CDs were anything other than marital property. Left without any corroborating evidence, the trial justice had only defendant's testimony; however, she found that he was not a credible witness based on his efforts to "hide all of these assets." Our review of the record reveals nothing to indicate that the trial justice "misconceived the relevant evidence or was otherwise clearly wrong." *See McCulloch*, 69 A.3d at 819 (quoting

- 11 -

*Tondreault v. Tondreault*, 966 A.2d 654, 660 (R.I. 2009)). In the absence of any other proof that defendant opened the CDs before the marriage or opened them with inherited funds, it was within the trial justice's discretion to equitably distribute them.

The defendant nevertheless contends that the CDs, as well as the marital domicile, are nonmarital assets because they are part of the trust. However, defendant's placement of marital property in the trust does not prevent equitable distribution, particularly given his "unfettered access to move assets in and out of the trust, which he did" on numerous occasions. The trust's existence and validity have no bearing on the classification and distribution of marital property in this case. *See Pezza v. Pezza*, 571 A.2d 1123, 1125 (R.I. 1990) (holding that a trial justice may "set aside a trust established by a marriage partner if it appears" the partner created the trust "with the intent to keep assets from the other marriage partner").

### C. Marital Domicile

Next, defendant argues that the trial justice's distribution of the appreciation of the marital domicile was improper. He claims that the marital domicile was nonmarital property and should not have been subject to distribution because, he argues, plaintiff did not contribute money to the purchase of the property, and the appreciation in the property's value was passive. Under § 15-5-16.1(b), the trial justice may not distribute property that a party "held * * * prior to the marriage."

- 12 -

However, if the property's value increases "as a result of the efforts of either spouse during the marriage[,]" the appreciation of value during the marriage may be distributed. Section 15-5-16.1(b); *Mezini v. Mezini*, 268 A.3d 1171, 1176 (R.I. 2022). We affirm the trial justice's decision regarding the marital domicile.

Although defendant alone purchased the property the year before he and plaintiff married, the two lived there together for the duration of the marriage. The plaintiff made monthly payments in the amount of $700, which she believed were her contribution to the mortgage, in addition to paying bills and helping to maintain the home. In his report, the commissioner also noted that "[t]he issue to be determined is the assignment of the appreciation of value [of the property] from the date of marriage * * *." These facts justify the trial justice's determination that the increase in the marital domicile's value was marital property. The trial justice did not abuse her broad discretion in finding that the marital estate includes the appreciation of the marital domicile during the marriage.[1]

### D. 78 Delwood

The defendant maintains that the appreciation in the value of 78 Delwood is marital property because the appreciation was due to home remodeling for which he made financial contributions. It is clear 78 Delwood was wholly owned by plaintiff

---

[1] As the Court explained in our discussion of the CDs, defendant's placement of marital property in the trust in 2013 does not impact the assignment and distribution of marital property. *See Pezza v. Pezza*, 571 A.2d 1123, 1125 (R.I. 1990).

- 13 -

prior to the marriage. The only question is whether the appreciation of value was "a result of the efforts of either spouse * * *." *See Mezini*, 268 A.3d at 1176 (quoting § 15-5-16.1(b)). We affirm the trial justice's decision.

The defendant's appraiser, Ms. Kelly, testified that the value of 78 Delwood increased during the marriage and that plaintiff updated the kitchen and bathroom during the marriage. Ms. Kelly testified that some home improvements add value to a home while others are merely necessary upkeep; this testimony seems to have informed the trial justice's opinion. Ms. Kelly explained that whether remodeling a kitchen impacts the value of a home depends on varying factors, including the age of the home, how long it has been since the owner updated the home, the materials used, and the comparison to other homes in the neighborhood. The trial justice found that with respect to 78 Delwood, the remodeling was nothing more "than necessary upkeep and repair to keep the home at a normal standard since it had not been updated since the 1940s." These findings support the trial justice's decision that the valuation of 78 Delwood was "nonmarital and not subject to equitable distribution."

**Discovery Sanctions**

The defendant contends that the trial court erred by sanctioning him $50,000. The defendant argues that the trial justice lacked legal authority to impose the sanction because she did not find defendant in contempt of any court order and, further, that the trial justice is not "empowered to arbitrarily levy a monetary

- 14 -

sanction upon a party [because] * * * the party * * * hindered the discovery process." We conclude that the trial justice was well within her legal authority to impose monetary sanctions.

This Court reviews "a trial justice's decision to impose sanctions for Rule 37 violations" for abuse of discretion. *Vicario v. Vicario*, 901 A.2d 603, 613 (R.I. 2006) ("[T]his Court has upheld monetary sanctions for [Rule 37] violations.") (quoting *Zaino v. Zaino*, 818 A.2d 630, 640-41 (R.I. 2003)). "Rule 37(b) of the Family Court Rules of Procedure for Domestic Relations provides the court with a smorgasbord of sanctions for situations in which the court is presented with a party's failure to comply with a discovery order pursuant to Rule 37(a)." *Lembo v. Lembo*, 677 A.2d 414, 419 (R.I. 1996).

There is no abuse of discretion here. The trial justice reached a reasoned decision based on the record and sanctioned defendant for his failure to comply with his discovery obligations. The trial justice imposed a daily sanction in the amount of $1,000 for each day defendant failed to provide the commissioner with his complete financial information, beginning on October 18, 2018. Although he was previously admonished and warned about sanctions due to his repeated failure to disclose his financial holdings fully and accurately, defendant continued to withhold information for another 497 days after the October 18, 2018 deadline.

- 15 -

Both parties were to file a DR-6, "a standardized form used by parties to a divorce proceeding to provide a statement of assets, liabilities, income, and expenses." *Tworog v. Tworog*, 45 A.3d 1194, 1197 n.8 (R.I. 2012). When a litigant files a DR-6, she or he certifies under the "pains and penalties of perjury" that the "information stated on the DR-6, [the party's] financial statement, and [any] attached schedules * * * is complete, true[,] and accurate." By signing a DR-6, a litigant certifies to the court that the information is "well grounded in fact" based on a reasonable inquiry. Family Ct. R. Dom. Rel. P. 11. Despite signing five different DR-6s under the penalties of perjury, defendant included inaccurate or incomplete information in each financial disclosure.

The DR-6 required defendant to disclose his "[g]ross income from all sources." The form includes a nonexhaustive list of twenty-six possible sources of income, including pensions, retirement funds, and workers' compensation. Although defendant has a pension and receives workers' compensation, he did not disclose either income source in his initial DR-6. Moreover, despite the DR-6 mandating disclosure of bank accounts and CDs, defendant disclosed all of his CDs only once the commissioner uncovered them by subpoenaing nearly every financial institution in the state. The parties were to disclose housing and real estate holdings, but defendant omitted the marital domicile from his initial DR-6 and failed entirely to disclose his Florida timeshare. The defendant disclosed these assets only after

- 16 -

repeated prodding from opposing counsel and the commissioner. Review of defendant's testimony clarifies that his failures to disclose were not due to a lack of knowledge that these assets existed; rather, he simply decided that he did not have to disclose them.

The DR-6 is a valuable tool that provides trial justices with a thorough view of the parties' finances so they may accurately and equitably distribute marital assets in a timely manner that is mindful of precious judicial recourses. However, a DR-6 is only as helpful as it is truthful. The defendant's repeated refusal to disclose his assets resulted in unnecessary delay. It wasted court resources and resulted in the appointment of a commissioner whose presence would otherwise not have been necessary. The trial justice properly exercised her discretion when imposing sanctions.

Moreover, to the extent there is any challenge to the amount defendant owes, the trial justice did not abuse her discretion in this respect either. The trial justice found that, because defendant did not disclose information about his Florida timeshare until February 2020, he would owe more than $500,000 in sanctions. However, the trial justice exercised her discretion and ordered him to pay only $50,000. This discounted sanction amounts to charging defendant approximately $100 per day. *See Zaino*, 818 A.2d at 640 (upholding a $250-per-day sanction for

- 17 -

discovery violations); *Lembo*, 677 A.2d at 419 (upholding a $200-per-day sanction for discovery violations).

### Defendant's Other Arguments

The defendant finally asserts that the trial justice erred by crediting $16,000 to plaintiff and by using a "double standard" that favored plaintiff. We are not persuaded by defendant's assertions, for which he does not offer any meaningful analysis.

The defendant argues that the trial justice's decision to award $16,000 to plaintiff was clearly wrong because the trial justice did not find that the $16,000 was marital property, and further that the court did not consider the factors set forth in § 15-5-16.1(a) before distributing the funds. He also argues that the ruling is erroneous because he used the money to pay his attorney, which is permissible in divorce proceedings. The defendant's argument ignores the trial justice's "wide discretion to decide how to allocate or offset spending from marital assets by one spouse during the marriage * * *." *Boschetto*, 224 A.3d at 831. Furthermore, defendant's arguments are conclusory. He does not include any legal basis for his arguments, nor does he point to any portion of the record that demonstrates how the trial justice's ruling was clearly erroneous. Simply stating that the trial justice made a mistake does not amount to a legal argument. Nonetheless, we have examined the record and cannot discern any legal error.

Similarly, the defendant suggests that the trial justice applied a double standard but does not point to anything in the record that supports this assertion. As such, he does not properly present an issue for our review. *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 58 (R.I. 2010) ("We have held that '[s]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing * * * does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.'") (quoting *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1132 n.1 (R.I. 2002)).

## Conclusion

For the foregoing reasons, we affirm the decision in its entirety.


Justice Lynch Prata did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Donna DiDonato v. Germano DiDonato. |
| **Case Number** | No. 2021-19-Appeal.<br>(K 17-2597) |
| **Date Opinion Filed** | June 21, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Kent County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Karen Lynch Bernard |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Michael J. Lepizzera, Jr., Esq. |
| | For Defendant:<br><br>Nicholas L. Colangelo, Esq. |