FRANCIS S. ROOT *vs.* FLORENCE M. ROOT.

MARCH 1, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

Moss, J. This is a petition for divorce on the ground, stated in General Laws, 1923, Chapter 291, Sec. 3, that the parties had "lived separate and apart from each other for the space of at least ten years." After a decision in the Superior Court for the petitioner on this ground, the case is now before us on the respondent's bill of exceptions to this decision.

The evidence shows clearly that when the petition was filed the parties had lived separate and apart for more than ten years and there is no dispute as to this fact. Under the statutory provision above cited, as decided in many cases, such fact is a ground upon which the Superior Court "may in its discretion enter a decree divorcing the parties from the bond of marriage." One of the two reasons which the respondent has urged before us for a reversal of the decision below is that by reason of special facts shown by the evidence in this case the decision was an abuse of his discretion by the trial justice.

At the time of the filing of the petition the respondent was actually residing in New Mexico, where she had been living for a number of years, and was not a domiciled inhabitant of this State in her own right. Therefore the following provision, being the first part of General Laws, 1923, Chap. 291, Sec. 10, applies to this case: "No petition for divorce from the bond of marriage shall be granted unless the petitioner shall have become a domiciled inhabitant of this State and have resided therein for the period of two years next before the preferring of such petition." The other reason which the respondent has urged before us for a reversal of the decision below is that the finding by the trial justice that the petitioner had met the requirement of this provision was not supported by the evidence.

As to the former of these two reasons, the undisputed evidence shows clearly the following facts. The parties, because of serious disagreements between them, separated in December, 1924, and had not lived together at all be-

tween that time and the filing of the petition in this case on January 15, 1935. They had not even met each other during that period except for a brief and apparently casual meeting in 1927, when a daughter of theirs was staying at a camp in the State of New York, and he called there to get the daughter and take her to Boston, and found his wife also there. During that period there had been no effort made by either of them to effect a reconciliation, and he testified in the case that there was no hope of such reconciliation.

Because of these facts and because we find in the evidence no proof of any fact or facts of a kind which this court has ever held to prevent a trial justice from exercising his discretion to grant a divorce on the ground alleged in the petition in the instant case, we hold that the trial justice here did not abuse his discretion in granting this petition.

As to the question whether the petitioner had been a domiciled inhabitant of this State and had resided therein for the period of two years next before the preferring of his petition, the answer is not so easy. Certain facts shown by the evidence have been urged as being opposed to the affirmative finding of the trial justice. About three or four years before December 9, 1932, the date when the petitioner claims to have become a domiciled inhabitant of the City of Providence in this State, he had lived continuously in Brighton, a suburb of the City of Boston, Massachusetts, being in the employment, as a traveling salesman of power, of the New England Power Company, or a subsidiary company, having its main office in Boston, by which he has been employed ever since in the same capacity, his territory being Massachusetts, New Hampshire, Vermont and Rhode Island.

In the spring of 1930, he wrote a letter to the respondent, in which he said that his lawyer had advised him that he could undoubtedly get a divorce, though strongly contested, by taking up residence for several months in an-

other State, the one in mind being presumably Nevada, but that it would cost him a good deal of money and perhaps his business position, and that he would give her $2,000 if she would obtain an absolute divorce from him promptly and quietly. This offer she refused. On December 9, 1932, he rented a single room in an apartment house on Smith street in the City of Providence and has kept it, at least to the time of the trial of this case. He has occupied it only about three or four nights a week, on the average, paying only $4.50 per week for it, although his income would have enabled him to have better living quarters. While he has had this room in Providence, he has been spending an average of between one and two nights a week at the home of a married sister in a suburb of Boston. He continued to keep his checking account in a bank in Boston, where his business headquarters were. He admitted that one reason for his coming to this State to live was that he wished to become a domiciled inhabitant here in order to enable him to get a divorce here.

On the other side the following facts were supported by evidence. Since he took the room in Providence, he has spent no more time at his sister's home than he did when he resided in Brighton. He had only one room in Brighton, where rents are higher than in Providence, and paid only $5 a week for that; and he testified that he was not in it any more than he was in his room in Providence. The latter room was comfortably furnished and he kept there his clothing and other personal effects, including paintings and pictures of his children. He received mail there all the time. He registered his automobile in Rhode Island and afterwards registered for voting in Providence and has since voted on such registration. He has been paying taxes here and by coming here to live has avoided a Massachusetts income tax. During the first part of his married life he and his family had lived in Providence and East Providence for about eight years.

He testified that, while one reason why he wanted to make his home in Providence was for the purpose of getting a divorce, he intended, when he came to that city, to make it his permanent home and had no intention of going to live elsewhere after getting a divorce; that he could do his traveling in connection with his business as well, and attend to the rest of his business substantially as well, if he lived here, as if he lived in a suburb of Boston. He explained having his bank account in Boston on the ground that in business hours he spent much more of his time there than he did in Providence.

It is well settled that if a person comes into a State and there acquires a place of residence, with the actual *bona fide* intention of making it his permanent home and with no intention of making his home in some other State after getting a divorce, it is no bar to his acquiring a legal domicile that he was influenced, in choosing that State for his home, by his desire to procure a divorce there. *Fosdick* v. *Fosdick,* 15 R. I. 130; *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 694; 1 Beale on Conflict of Laws, 161, 162. Restatement of Conflict of Laws, § 22. A man's own testimony is competent and proper evidence of what his intentions were as to acquiring a new domicile.

In the instant case the question is a rather close one on the evidence, which would, we believe, have supported a finding by the trial justice against the petitioner. But, after hearing and reviewing the evidence, he found that the petitioner had complied with the provisions of the above-quoted Sec. 10 of the divorce statute of this State, "and that at the time of the preferring of his petition for divorce on the 15th day of January, 1935, he was a domiciled inhabitant of this State and had resided therein for two years next before the commencement of said petition."

This was a finding of fact. *Bridges* v. *Bridges,* 46 R. I. 191, 195; *Paine* v. *Paine,* 43 R. I. 478, 481. It was based almost entirely on testimony given before the trial justice, where he had the great advantage of hearing and seeing

the witnesses. The rule is well established that such a finding should not be disturbed by this court, unless it clearly fails to do justice between the parties, or is clearly erroneous. *Mason* v. *Mason*, 46 R. I. 43, 44; *Warren* v. *Warren*, 33 R. I. 71. Under all the circumstances we are of the opinion that the decision did not clearly fail to do justice between the parties and was not clearly erroneous. It is therefore sustained.

The respondent's exception is overruled and the case is remitted to the Superior Court for further proceedings.

*Taft & Beane,* for petitioner.

*Frank Barnbrook,* for respondent.