JUAN CABRER LLULL, Plaintiff and Appellee, *v.* MARINA PIETRI TROCHE, Defendant and Appellant.

No. 9523. Argued May 26, 1947.—Decided June .11, 1947.

*Agustín E. Font* for appellant. *Leopoldo Tormes García* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The defendant has appealed from a judgment granting a divorce to the plaintiff on the ground of separation for an uninterrupted period of more than three years. Act No. 62, Laws of Puerto Rico, 1942 (p. 582), amending § 96 of the Civil Code. The only question raised by the appeal of the wife is whether as a matter of law the uncontroverted facts constituted uninterrupted separation for more than three years.

The parties were married in 1917 and have three children, all more than 21 years of age. Until September, 1941, the plaintiff lived in Ponce with his wife and children. At that time the plaintiff went to live in a different house on a different street in Ponce while his wife and children continued to live in the first house. Thereafter, the plaintiff conti-

nued to come to the house where the defendant resided, in order to eat lunch with her and their children. He continued this practice until May 27, 1945, when he ceased coming to the house of the defendant.

In 1942 the plaintiff accompanied his wife to Humacao where, together with the parents of the bride, they arranged for the marriage of their son Agustín. Subsequently he was present with the defendant at the baptism of the first son of Agustín. In 1943 he made the round trip to Humacao with the defendant in his automobile to see their son Agustín when the latter returned from service in the Pacific with the armed forces. The plaintiff made the same trip to Humacao with the defendant when the daughter of Agustín was born and in 1945 when the daughter was baptized. On the latter occasion the plaintiff and the defendant were photographed together with a group of relatives and friends.

The plaintiff and defendant joined in issuing invitations for the wedding of their daughter, which was held on March 31, 1945, at the residence of the defendant. He helped to prepare the house, he escorted the bride to the church and at the reception in the house of the defendant he attended the guests as head of the family, together with the defendant and other relatives.

During the period from 1941, when the plaintiff left to reside in a separate house, and July 26, 1945, when he filed this complaint, the plaintiff was present at cocktail parties given by his daughter Marina and birthday and saintday parties of his children which took place at the home of the defendant. However, after 1941 the plaintiff and his wife never went out together to attend social functions, except for the trips to Humacao already described.

The plaintiff never spent a night at the home of the defendant after 1941. He always slept, and except for lunch, ate at his separate house, where he kept his clothes and was

treated by doctors when he was ill. The plaintiff never had sexual intercourse with the defendant after he established his separate residence in 1941.

The lower court in granting the judgment of divorce held that the separation contemplated by the statute began in 1941 when the plaintiff moved to a separate house and has been uninterrupted for more than three years when this suit was filed in 1945. The defendant, however, contends that the separation began on May 27, 1945, when the plaintiff stopped coming to her house for lunch, and that the three-year period of separation had therefore not run when this suit was filed two months after that date.

■ We are not called on to inquire in this case whether the maintenance of a different residence by the husband would be sufficient to constitute separation under our statute if the parties nevertheless continued their sexual relations. *Cf. McClure* v. *McClure,* 172 S. W. (2d) 243 (Ark. 1943); *Reilly* v. *Reilly,* 190 A. 476 (R.I. 1937): Schouler, Divorce Manual (Warren), pp. 181–82.

■ Nor are we required to determine here whether a husband is entitled to a divorce on the ground of separation if he has had no sexual relations with his wife for more than three years, but has continued to live in the same house with her during that period. *Cf. Boyce* v. *Boyce,* 153 F. (2d) 229 (C.C.A. D.C., 1946); *Dudley* v. *Dudley,* 33 S. E. (2d) 489 (N.C. 1945); *Christiansen* v. *Christiansen,* 28 A. (2d) 745 (R.I. 1942); *McDaniel* v. *McDaniel,* 165 S.W. (2d) 966 (Ky. 1942); *McNary* v. *McNary,* 11 P. (2d) 760 (Wash., 1941); *Singleton* v. *Rogers,* 106 So. 781 (La. 1926), and cases cited therein; *Gates* v. *Gates,* 232 S. W. 378 (Ky. 1921); *Stewart* v. *Stewart,* 122 A. 778 (R.I. 1923); Schouler, *supra.*

■ Likewise we do not have a situation where the plaintiff, to all outward appearances, continued to live in the same house with his wife, whereas in fact he was surreptitiously mantaining a separate household. Here, unlike the hus-

band in *Bockman* v. *Bockman,* 165 S. W. (2d) 256 (Ark. 1942), the plaintiff definitely broke with his wife in 1941. Cf. *Byers* v. *Byers,* 22 S. E. (2d) 902 (N.C. 1942). And thereafter he lived apart from her openly and conspicuously. The testimony shows that this was well known among his neighbors, domestic servants, business employees, his physician, his family and the community in general. Indeed, if anything was concealed from public knowledge it was the fact that he joined his wife and children for lunch daily as he always entered the house of the defendant by a private rear entrance and remained on the rear porch where he could not be seen.

We find nothing in § 96 requiring that in addition to living apart openly and not indulging in sexual relations, a husband and wife must become enemies and refuse to see or speak to each other. Rather they are entitled to part amicably and to remain friends. Indeed, their occasional encounters are to be encouraged in the hope of reconciliation. *Ayala* v. *Ayala,* 162 So. 59 (La., 1935).

Moreover, where as here the couple have children, the husband has certain rights and duties toward his children. Only by associating with them could he properly fulfill these duties and enjoy his privileges as a father. The testimony shows that it was precisely because he wished to lunch with his children that he went to the house of his wife for lunch during this period. And when his daughter Marina married in 1945, he ceased going to the house for lunch. In the same way, the fact that together with his wife he invited people to the marriage of his daughter and attend certain social functions involving his children showed only performance of his duties as a father and his affection for them.

We hold that a husband who openly lives apart from his wife and has no sexual intercourse with her is separated from her within the meaning of § 96. And this separation is not interrupted because he lunches at the home of his estranged wife in order to be with his children, joins her in perform-

ing their responsibilities toward their children and attends family social functions. We have found no cases exactly in point on this question, but see *North* v..*North,* 113 So. 852 (La. 1927); *Root* v. *Root,* 190 A. 450 (R.I., 1937); Annotation, 166 A.L.R. 498.

The judgment of the district court will be affirmed.