Juan Cabrer Liull, demandante y apelado, *v.* Marina Pietri
Troche, demandada y apelante.

Núm. 9523.—*Sometido:* Mayo 26, 1947. *Resuelto:* Junio 11, 1947.

*Agustín E. Font*, abogado de la apelante; *Leopoldo Tormes García*,
abogado del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

La demandada apela de una sentencia concediéndole el divorcio al demandante por la causal de separación ininterrumpida por un período de más de tres años. Ley núm. 62, Leyes de P. R., 1942 ((1) pág. 583), para enmendar el artículo 96 del Código Civil. El único punto suscitado en la apelación de la esposa es si, como cuestión de derecho, los hechos incontrovertidos de este caso constituyen la separación ininterrumpida por más de tres años.

Las partes se casaron en 1917 y procrearon tres hijos, todos mayores de 21 años en la actualidad. El demandante vivió en Ponce con su esposa e hijos hasta septiembre de 1941. Para aquel entonces se mudó a una casa distinta situada en otra calle de la misma ciudad, permaneciendo su esposa e hijos en la primera casa. Luego, el demandante continuó yendo a la casa donde vivía la demandada, con el fin de almorzar con ella y con sus hijos. Continuó haciendo esto hasta el 27 de mayo de 1945, cuando dejó de ir a la casa de su esposa.

En 1942 el demandante acompañó a ésta hasta Humacao donde, junto a los padres de la novia, hicieron arreglos para el matrimonio de su hijo Agustín. Posteriormente, asistió en compañía de la demandada, al bautismo del primogénito de Agustín. En 1943 hizo un viaje de ida y vuelta a Humacao, en su automóvil, en compañía de su esposa, para ver a su hijo Agustín cuando éste regresó de operaciones en el Pacífico con las Fuerzas Armadas. Efectuó el mismo viaje a Humacao, también con la demandada, cuando nació la hija de Agustín y cuando ésta fué bautizada en 1945. En esta última ocasión, el demandante y la demandada se retrataron juntos con un grupo de familiares y amigos.

El demandante y la demandada expidieron juntos las invitaciones para las bodas de su hija, las que se celebraron el 31 de marzo de 1945 en la residencia de la esposa. Él ayudó en los preparativos de la casa, acompañó a su hija

hasta el altar y junto a la demandada y a otros familiares, y en calidad de jefe de familia, atendió a los invitados en la recepción que se efectuó en la casa de su esposa.

Entre 1941, cuando el demandante se mudó a una casa distinta y julio 26 de 1945, cuando radicó esta demanda, éste había estado presente en fiestas informales (*cocktail parties*) dadas por su hija Marina y en cumpleaños y onomásticos de sus hijos, celebradas en casa de la demandada. Sin embargo, después de 1941, el demandante y su esposa nunca salieron juntos para asistir a actos sociales con excepción de los viajes a Humacao antes mencionados.

El demandante nunca pasó una noche en casa de la demandada después de 1941. Siempre durmió, y con excepción del almuerzo, comió en su casa, donde tenía su ropa y donde los doctores le atendían cuando se enfermaba. Nunca tuvo relaciones sexuales con la demandada después de haberse mudado a su residencia separada en 1941.

Al conceder el divorcio la corte inferior resolvió que la separación contemplada por el estatuto empezó en 1941, cuando el demandante se mudó a una casa distinta, siendo dicha separación ininterrumpida por más de tres años cuando se radicó la demanda en 1945. La demandada, sin embargo, alega que la separación empezó el 27 de mayo de 1945, cuando el demandante dejó de ir a almorzar a su casa y que el período de tres años de separación no había por tanto transcurrido cuando se radicó la demanda en este caso, dos meses después de dicha fecha.

No tenemos que decidir en este caso si el hecho de que un esposo tenga una residencia distinta sería suficiente para constituir la separación de acuerdo con nuestro estatuto, si no obstante ello las partes han continuado sus relaciones sexuales. *Cf. McClure v. McClure*, 172 S. W.2d 243 (Ark., 1943); *Reilly v. Reilly*, 190 A. 476 (R. I., 1937); Schouler, *Divorce Manual* (Warren), págs. 181–82.

Tampoco tenemos que determinar aquí si un esposo tiene derecho al divorcio por la causal de separación si no

ha tenido relaciones sexuales con su esposa por más de tres años, pero ha continuado viviendo en la misma casa con ella durante dicho período. *Cf. Boyce* v. *Boyce,* 153 F.2d 229 (U.S.C.A.D.C., 1946); *Dudley* v. *Dudley,* 33 S. E.2d 489 (N. C., 1945); *Christiansen* v. *Christiansen,* 28 A.2d 745 (R. I., 1942); *McDaniel* v. *McDaniel,* 165 S. W.2d 966 (Ky., 1942); *McNary* v. *McNary,* 111 P.2d 760 (Wash., 1941); *Singleton* v. *Rogers,* 106 So. 781 (La., 1926), y casos allí citados; *Gates* v. *Gates,* 232 S. W. 378 (Ky., 1921); *Stewart* v. *Stewart,* 122 A. 778 (R. I., 1923); Schouler, supra.

■ De igual manera aquí no nos confrontamos con la situación donde el demandante, según las apariencias externas, continuó viviendo en la misma casa con su esposa, mientras que, como cuestión de hecho, mantenía subrepticiamente una casa distinta. Aquí, contrario a lo que hizo el esposo en *Bockman* v. *Bockman,* 165 S. W.2d 256 (Ark., 1942), el demandante rompió definitivamente con su esposa en 1941. *Cf. Byers* v. *Byers,* 22 S. E.2d 902 (N. C., 1942). Y una vez hecho esto vivió separado de ella pública y notoriamente. La prueba demuestra que esto era del conocimiento de sus vecinos, de sus sirvientes, empleados del negocio, de su médico, su familia y de la comunidad en general. En verdad, si algo se le ocultó al público fué el hecho de que se reunía con su esposa e hijos diariamente para almorzar, ya que entraba a la casa de la demandada por una entrada privada en la parte posterior de la casa y permanecía én la terraza trasera donde nadie lo podía ver.

En el artículo 96 no encontramos nada que exija que además de vivir públicamente separados y no sostener relaciones sexuales, el marido y la mujer tengan que convertirse en enemigos y negarse a verse o a hablarse entre sí. Por el contrario, tienen derecho a separarse en tonos cordiales y a permanecer siendo amigos. Es más, sus encuentros esporádicos deben ser estimulados en la esperanza de que se reconcilien. *Ayala* v. *Ayala,* 162 So. 59 (La., 1935).

Además, cuando como ocurre en este caso, el matrimonio procrea hijos, el esposo tiene ciertos derechos y deberes hacia ellos. Solamente mediante la asociación con sus hijos, puede el padre cumplir a cabalidad con estos deberes y disfrutar de los privilegios inherentes a su condición de tal. La prueba demuestra que fué precisamente debido a su deseo de almorzar con sus hijos, que él iba a la casa de su esposa durante ese tiempo. Y al casarse su hija Marina en 1945, dejó de ir a almorzar a la casa. Asimismo, el hecho de que en unión a su esposa cursara invitaciones para el matrimonio de su hija y asistiera a ciertos actos sociales relacionados con sus hijos, sólo demuestra el cumplimiento de sus deberes de padre y su cariño para con ellos.

Resolvemos que un marido que públicamente vive separado de su esposa y no tiene relaciones sexuales con ella, está separado de ésta dentro del significado del artículo 96. Y que esta separación no se interrumpe porque el esposo, con el fin de reunirse con sus hijos, almuerce en casa de su esposa de quien está separado, se una a ella en el cumplimiento de los deberes para con sus hijos y asista a actos sociales de la familia. No hemos hallado casos exactamente iguales al que nos ocupa, pero véanse *North* v. *North*, 113 So. 852 (La., 1927); *Root* v. *Root*, 190 A. 450 (R. I., 1937); Anotación, 166 A.L.R. 498.

*La sentencia de la corte de distrito será confirmada.*