**Supreme Court**

No. 2011-14-Appeal.
No. 2011-15-Appeal.
No. 2011-17-Appeal.
No. 2011-18-Appeal.
(K 09-243)

Lori Noel Meyer                         :

            v.                          :

Patrick W. Meyer.                       :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2011-14-Appeal.
No. 2011-15-Appeal.
No. 2011-17-Appeal.
No. 2011-18-Appeal.
(K 09-243)

Lori Noel Meyer         :

v.                      :

Patrick W. Meyer.       :

Present: Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.** This case is before the Supreme Court on four consolidated appeals filed by the defendant, Patrick W. Meyer (Patrick or defendant).[1] These appeals all stem from a divorce action that was commenced in April of 2009 when the plaintiff, Lori Noel Meyer (Lori or plaintiff), filed a complaint for divorce against the defendant. Patrick presses four issues on appeal: (1) whether or not the trial justice erred in denying Patrick's motion to dismiss for lack of subject matter jurisdiction, which motion contended that Lori was not a resident of Rhode Island in accordance with the pertinent statute; (2) whether or not the trial justice erred in awarding Lori rehabilitative alimony; (3) whether or not the trial justice erred with respect to an award of counsel fees; and (4) whether or not the trial justice erred in his

---

[1]     In this opinion, we shall generally refer to Patrick W. Meyer and Lori Noel Meyer by their first names for the convenience of the reader; no disrespect is intended.

adjudication of Patrick as being in contempt of court.  For the reasons set forth in this opinion, we affirm the judgments of the Family Court in their entirety.

## I

## Facts and Travel

Patrick and Lori were married on October 1, 2005 in Newport, Rhode Island.  Although both had previously been married and children were born of those marriages, they had no children together.  Some three-and-one-half years later, on April 22, 2009, Lori filed a complaint for divorce in Kent County Family Court.  It is significant that Patrick was personally served in Rhode Island with a summons and the complaint on April 24, 2009.  (We note that, after Patrick was served with a summons and the complaint for divorce, he never thereafter personally appeared in the Family Court for any of the several proceedings.)  Patrick filed an answer, in which (inter alia) he neither admitted nor denied the allegation in the complaint that "Lori Noel Meyer * * * has been a domiciled inhabitant of [Rhode Island] and has resided therein for more than one year next before filing of this Complaint and is now a domiciled inhabitant of [Rhode Island]."

Early in the divorce proceedings, orders entered requiring Patrick to appear for the taking of his deposition.  He was additionally ordered to pay Lori $20,000 as an advance of her equitable assignment.  On September 9, 2009, Patrick filed a motion to dismiss Lori's complaint for divorce, averring that the Family Court did not have jurisdiction—because, he contended, Lori had not been "a domiciled inhabitant and resident of the State of Rhode Island for one year prior to the filing" of the complaint.

# A

## The Defendant's Motion to Dismiss for Lack of Jurisdiction

On February 15, 2010, the trial justice presided over a hearing on defendant's motion to dismiss for lack of jurisdiction. In the course of being questioned by Patrick's attorney, Lori testified: "I reside at 500 East Greenwich Avenue, * * * West Warwick, Rhode Island." She added that she had been residing at the same address when she filed her complaint for divorce on April 22, 2009. When asked by Patrick's attorney how long she had been "physically living in the State of Rhode Island" prior to filing the complaint for divorce, Lori responded: "I have always been physically living in the State of Rhode Island. I vacation in France."

Patrick's attorney then entered into evidence without objection various admissions made in Lori's August 25, 2009 Response to Defendant's Second Request for Admissions. In that document, Lori admitted that she "had been physically present in France" from January 8 to August 8, 2008. Lori also admitted that, from September 3 to November 11, 2008, she had "been physically present in" and "had been living in France." Additionally, Lori admitted that she returned to Rhode Island from France on November 12, 2008 and had been "living in Rhode Island" since that date. In response to a question posed by Patrick's counsel during the hearing on February 15, 2010, Lori acknowledged that she had been out of this country for approximately 172 days between April of 2008 and April of 2009.

Lori additionally testified that she and Patrick owned a house in the South of France; their goal was to work on that house in order to have a "very large vacation home" there. She added that they had stayed in several rented homes while they were working on that project. Lori explained that her role as an interior designer and project manager for their house in France

required her to be "physically present while the project [was] under construction at all times." She testified that, although she had stayed in France, her "permanent residence has always been West Warwick, Rhode Island." Lori further testified that her intent with respect to the home in the South of France was to "vacation" there. She explained that she and Patrick did not "have an intention to stay in France any particular amount of time." She added: "[We intended] to travel extensively and to spend our summers and our holidays here in Rhode Island at our home with our families."

In addition, Lori testified that she did not own the West Warwick home, but that her father did. She also testified that she had filed state and federal tax returns for tax years 2007 and 2008 and that she used the West Warwick address on those returns. Lori also testified that her voting address was in West Warwick and that she had not, in any documentation, state or federal, listed any other place as her residence and domicile. She further acknowledged that her intent had been to return to Rhode Island and stay in West Warwick after she completed her work on the project in France; she added that, in actuality, her work on the project was never completed.

At the conclusion of that February 15, 2010 hearing, the trial justice issued a decision from the bench. In his summary of the evidence that had been presented during the hearing, the trial justice noted that plaintiff had acknowledged that she "was out of the State of Rhode Island in southern France for 172 days." In addition, he stated:

> "Ms. Meyer stated that at all times relevant hereto, she intended to remain in Rhode Island as a resident. She has filed a tax return for 2008 as a resident of Rhode Island and she has maintained her * * * address as her voting address. The question is <u>did she intend by her time away from the State of Rhode Island to have absented herself from Rhode Island to such a degree that she is no longer a resident herein</u>.

- 4 -

"The [c]ourt is certainly mindful of many people spending the entire year out of the State of Rhode Island. * * * They still remain Rhode Islanders to the core.

"The [c]ourt is satisfied that Ms. Meyer's testimony is credible and that <u>she never intended to be anything other than a resident and domiciliary of Rhode Island</u> despite the fact that she spent 172 days in southern France working on a project for a vacation home that she does, in fact, own with her current husband. The [c]ourt, therefore, finds that there is jurisdiction in the State of Rhode Island and that the Plaintiff's trips to France did not interrupt her residency herein, so the motion to dismiss is denied." (Emphasis added.)

In an order dated March 9, 2010, the trial justice reduced his ruling to writing as follows:

"1. The [c]ourt heard the testimony of Plaintiff, Lori Noel Meyer, in the above-entitled matter regarding Defendant's Motion to Dismiss for lack of jurisdiction. The [c]ourt finds the testimony of the Plaintiff to be credible, that she, at all times relevant hereto, <u>intended to be a resident of the State of Rhode Island</u>, County of Kent and that at no time was there intent to live in any other place. Defendant's Motion to Dismiss is denied." (Emphasis added.)

**B**

**The Plaintiff's Emergency Motion for a Restraining Order**

On February 22, 2010, Lori filed an emergency motion, requesting a hearing or a conference with the court. She was seeking an order restraining Patrick from proceeding with a divorce action in any other jurisdiction; she also wanted the order to deny him any affirmative relief until he appeared before the court in the pending divorce action in Rhode Island. On February 24, 2010, a hearing was held on Lori's motion.

Lori testified at the hearing regarding a letter (written in French) dated December 10, 2009 from Patrick's attorney in France. Patrick's Rhode Island attorney asserted that the letter notified Lori that a divorce action was being filed in France. In addition, Patrick's attorney entered into evidence an email from Lori to Patrick requesting Patrick to translate that letter for

her. Lori testified that she could read and speak French, but that she could not understand it "verbatim." When questioned about the December 10 letter, Lori stated:

> "[T]here is nothing here that says that they filed a motion for divorce in France. That is not stated in this letter. It is saying we should proceed in France."

Patrick's attorney then asked her if she knew "that [her] husband was looking to file for a divorce in France." Lori responded: "I [knew] that he would like to proceed with the divorce in France rather than in the United States. I am aware of that." Patrick's attorney represented to the court at the February 24 hearing that her client had instructed her "to reiterate that there is already an action previously filed in France." It should be noted that the record before this Court indicates that formal divorce proceedings were not initiated by Patrick in France until March 21, 2010.

At the conclusion of the hearing, the trial justice orally enjoined Patrick from proceeding with a divorce action in France. After that hearing on Lori's emergency motion, an order, dated March 16, 2010 nunc pro tunc to March 9, 2010,[2] entered, which reads, in pertinent part, as follows:

> "* * * Defendant, Patrick W. Meyer, is enjoined and restrained from proceeding with an action for divorce in France or any other jurisdiction until further Order of this Court."

---

[2] The original order incorrectly stated the date on which the hearing on Lori's emergency motion had been held. The defendant, through counsel, filed a motion to vacate the original order and did not object to the new order. We shall consider the operative order to be the order entered on March 16, 2010 and made effective nunc pro tunc to March 9, 2010.

**The Trial**

The trial, which lasted only one day, commenced in the Family Court on June 23, 2010.[3] The only witnesses were Lori herself and her father, Philip W. Noel. Patrick, who was not present, was represented by counsel.

**1**

**The Testimony of Lori Noel Meyer**

Lori testified that Patrick and she were married on October 1, 2005. She further acknowledged that it was her representation to the court in her complaint for divorce that she had been "a resident and domiciled inhabitant of the State of Rhode Island for a period of at least one year continuously next prior to the filing of this complaint for divorce." Lori testified that her "present residence" was located in West Warwick, Rhode Island. She further stated that there were no children born of her marriage to Patrick. She also stated that there was no chance of reconciliation between Patrick and her.

When asked by her attorney to "enlighten the [c]ourt" as to the reasons for the "break up of the marriage," Lori testified that Patrick's treatment of her had changed during their marriage and that he was "extremely belittling, berating, very insulting" towards her. She added that Patrick was "mentally and emotionally abusive and verbally as well."

Lori testified that she had received $10,000 from Patrick as an equitable assignment pursuant to an earlier Family Court order in this divorce action. She added, however, that the remainder of the assets in their joint account had been removed while the case was pending. She also testified that she did not have any "liquid assets," "cash assets," "CDs," or "funds"; she

---

[3]     In the course of the trial, the trial court granted Lori's request that she be allowed to resume using her maiden name, Lori Anne Noel.

noted, however, that she did have "physical assets" in the form of clothing and a 2000 model vehicle as well as some "nominal jewelry." Lori acknowledged that she had listed in a filing with the Family Court certain assets that were under Patrick's control or were in France; she estimated the value of those assets (excluding real estate) to be about $65,000 in total. Lori further testified that, on the next day (June 24), she would be beginning work in a new position; she added that she had previously been self-employed as an interior designer. She also stated that, in order to support herself, she had been relying on loans from her parents and the remaining funds in her savings and checking accounts.

Lori further testified with respect to her understanding of Patrick's financial situation during the course of their marriage. She said that Patrick had relied on interest from investments as income. She also stated that Patrick had sold a number of radio stations to a buyer for an amount "in excess of ten million"[4] and that he received periodic payments as a result of that sale. Lori also testified that she was aware of a bank account in Switzerland; she added that she had a credit card tied to that Swiss account, which card she had used when she made purchases during the marriage.

Lori testified that Patrick and she had searched for a vacation home in the South of France that they might renovate. She stated that they eventually purchased a particular house in 2006 and began the work of renovation in July of 2007. Lori testified that it was she who "did all the plans" for their vacation home—including the elevations, mechanical systems, lighting systems, electrical layout, windows, doors, shutters, and cabinetry. (Lori indicated that she had an associate degree in interior design.) She further testified that she would estimate that she worked on the project for some 3,000 hours.

---

[4] Lori was not able to specify whether the "ten million" figure related to an amount in U.S. dollars or in euros.

Lori testified that, when Patrick and she had purchased the property in the South of France, each of them had initially owned a 50 percent interest in the home. She further testified that, at some point, Patrick and she had allowed each of Patrick's two sons to have a 15 percent share in the property, leaving Patrick and her with a 35 percent share each. Lori testified that, as of the time of trial, she no longer had any ownership interest in the property.

With respect to their lifestyle while married, Lori testified that Patrick and she had traveled together since they met in 2004. She stated that they were "very privileged" and that they "traveled extensively" and "stayed in fine hotels"; she proceeded to list the places that they visited.

Lori also testified as to the amount of money that she sought from Patrick—including the amounts mandated by the court orders which had entered against him since the filing of her complaint for divorce.

Lori testified that she was paying the expenses connected with her current living situation, but she added that she did not pay rent. She testified that she filed a joint tax return with Patrick in 2007, and she stated that Patrick had been living in West Warwick until the time of their separation.

On cross-examination, Lori testified that she was aware of interest payments that were due on the loan that had been obtained for the purchase of the house in France. She also testified that she was aware that the house was listed for sale. Lori was then questioned about her expenses that were listed on a form (entitled DR6) that she had been required to file with the Family Court; those expenses included taxes, home insurance, massages, gym and personal training, traveling expenses, condominium fees and assessments, food, clothing, personal cosmetics, and haircuts.

Lori further testified that Patrick had begun "belittling" her when they began the vacation home project in the South of France in 2007. However, upon being asked by Patrick's attorney, Lori admitted that she had sent a card to Patrick on the occasion of their wedding anniversary in 2008 and that she had enclosed a copy of their wedding vows.

Lori's attorney also introduced into evidence Lori's Request for Admissions to Patrick and his answers, with the representation to the court that Patrick's responses to same had not been sworn; the attorney contended that, due to the fact that the answers had not been sworn to under oath, the Request for Admissions should be deemed admitted. The questions contained within the Request for Admissions concerned Patrick's fidelity to Lori during their marriage. Lori's attorney also filed with the court a motion requesting that the two orders which he contended Patrick had violated be reduced to money judgments against Patrick.

**2**

**The Testimony of Philip W. Noel**

Philip W. Noel, Lori's father, testified that he had met Patrick when Lori and Patrick had begun dating. He testified that they had spoken several times because Patrick spent "quite a bit of time" with the Noel family. Mr. Noel further stated that, when Patrick asked whether Mr. Noel would object to his marrying Lori, Mr. Noel asked Patrick how he planned to support the "family and * * * Lori." Mr. Noel said that Patrick responded by telling him that he was worth approximately $6 million from income from the sale of broadcast radio stations.

Lori's attorney asked Mr. Noel whether he knew that Lori "ha[d] been a resident and domiciled inhabitant of the State of Rhode Island for a period of at least one year continuously next prior to the filing of her complaint for divorce." Mr. Noel responded: "Yes. She's always been a resident here." Mr. Noel further testified that Lori was then living in a condominium in

West Warwick. He stated that he had loaned Lori approximately $15,000 since Patrick and she had separated.

When asked by Patrick's counsel whether he paid for some of the expenses of the West Warwick condominium, Mr. Noel stated that he did not pay for any of them; he added, however, that Lori did not pay rent for the condominium.[5] Mr. Noel further stated that Patrick had contributed approximately $50,000 towards the renovation of the West Warwick condominium.

**D**

**The Interlocutory Decision Pending Entry of Final Judgment**

On July 22, 2010, the trial justice rendered a bench decision. The trial justice first summarized the testimony and other evidence presented at trial. With respect to plaintiff's exhibit No. 4 (viz., Patrick's response to Lori's Request for Admissions regarding his relationship with other women (vel non)), the trial justice ruled that the lack of a sworn response resulted in the Request for Admissions being deemed admitted and that, therefore, Patrick had in effect (or, as the trial justice phrased it, "by operation of law") "admitted to having sexual relations with more than one woman, not his wife, since [their] marriage." The trial justice also found that sanctions for violation of an order requiring Patrick to appear for his deposition amounted to $64,500 as of the date of trial. Additionally, the trial justice found that, in violation of a previous court order, Patrick had not advanced Lori $20,000 as an equitable assignment.

With respect to the distribution of the marital property, the trial justice found that 70 percent of the home in the South of France was marital property, and he determined that the value thereof should be divided equally, with 35 percent of the sale proceeds to be allocated to each party. The trial justice proceeded to divide the rest of the marital estate equally, except that

---

[5] Mr. Noel estimated that the rent for the West Warwick condominium would have been in the range of $1,200 to $1,400 a month.

he ruled that Lori and Patrick could retain their own personal property, including their automobiles.

The trial justice further found that Lori was entitled to rehabilitative alimony for a period of three years in the amount of $1,250 per week. Additionally, the trial justice found that, as of the date of the decision, sanctions against Patrick in the amount of $64,500 had accumulated; the trial justice imposed those sanctions as a separate judgment against Patrick. The trial justice allowed Patrick a $10,000 credit of equitable assignment which could be recouped from Lori's share of the sale of the property in France. The trial justice further ordered Patrick to pay Lori $20,000 as an advancement of equitable assignment, which the trial justice allowed might be a credit against Lori's share of the proceeds from the sale of the house in France. The trial justice also found that Patrick would be required to make a reasonable contribution towards Lori's counsel fees, the amount of which would be determined after a hearing. The trial justice additionally ordered that Patrick deposit $45,602.50 in an account for Lori based upon the transfers out of their joint account in contravention of automatic court orders.

The trial justice expressly found that Lori had "been a domiciled resident and inhabitant of Rhode Island continuously for at least one year next prior to April 22, 2009, the date she filed her complaint for divorce in this matter."

The trial justice's interlocutory decision pending entry of final judgment was reduced to a written decision, which entered on September 15, 2010; that same day, a judgment entered in favor of Lori in the amount of $64,500 (based on the sanctions assessed), exclusive of any interest, fees, and costs. Patrick filed a timely appeal of the interlocutory decision pending final judgment.

## E

## Subsequent Travel

On September 15, 2010, the attorneys for the parties appeared in the Family Court in order to (1) review the written interlocutory decision pending final judgment (which would enter later that day) and (2) attend a hearing with respect to the amount that Patrick would be required to contribute towards Lori's counsel fees.

At that hearing, Lori's attorney (having submitted a bill in the amount of $87,625) testified with respect to the issue of counsel fees. During cross-examination by Patrick's attorney, when asked whether he would have expected to receive the full amount if the Noel family had not been such long term close friends of his, Lori's attorney responded that he would not have expected to receive the full amount, but that he had put the bill together so that "it would be completely done rather than * * * a partial bill"; he added that he "did it exactly as it shook out to be during the time and efforts that [he] put on the case." Lori's attorney also stated that, during the trial,[6] he had asked Lori about her expectation for reimbursement from her husband with respect to counsel fees. He stated that he had "suggested that if she was looking for something in the nature of $25,000 * * * I would have probably said that that was it and that was enough, but I prepared this complete bill because it was the honest time and effort that went into it."

Another member of the Rhode Island bar testified that he considered the fees billed by Lori's attorney to be fair and reasonable.

---

[6]     The testimony at trial to which Lori's attorney was referring proceeded as follows:
        "Q. Do you have any funds of your own with which to pay at this
        time counsel fees in the neighborhood of $25,000?
        "A. No, I am sorry, I don't."

In rendering his decision, the trial justice observed that the $450 hourly rate charged by Lori's attorney was "fair" and "reasonable." He further found that the total amount of fees owed by Lori was $87,625 and that Patrick would be responsible for half of that amount. The trial justice's decision entered on September 22, 2010 as an order and a judgment to the effect that Patrick must contribute $43,762.50 towards Lori's counsel fees. Patrick filed a timely appeal of the order and judgment concerning counsel fees.

Lori's attorney also filed a motion to adjudge Patrick in contempt for having violated the prior order of the court restraining him from proceeding with a divorce in another jurisdiction, which motion was heard by the trial justice on October 4, 2010. In an order entered November 29, 2010, the trial justice found that Patrick was in contempt of his order enjoining and restraining Patrick from proceeding with a divorce action in France or in any other jurisdiction, and he directed Lori's attorney to present evidence with respect to counsel fees that might be imposed with respect to that contempt finding. Patrick filed a timely appeal of that order.

Upon receipt of a fee affidavit from Lori's attorney and after a hearing on the matter on November 29, 2010, an order entered on December 1, 2010 indicating (1) that counsel fees (with respect to the preparation for and appearance at the October 4, 2010 hearing) in the amount of $2,925 were fair and reasonable and (2) that each party was responsible for 50 percent thereof ($1,437.50). The trial justice, in that order, denied Patrick's motion for a stay. That order was then reduced to a judgment (also entered on December 1, 2010) to the effect that Patrick should pay Lori $1,437.50 as contribution towards counsel fees. Patrick filed a timely appeal of the judgment.

## II

## Issues on Appeal

The following are Patrick's four contentions on appeal: (1) that the trial justice erred in denying Patrick's motion to dismiss for lack of subject matter jurisdiction, which motion contended that Lori was not a resident of Rhode Island as required by the pertinent statute; (2) that the trial justice erred in awarding Lori rehabilitative alimony; (3) that the trial justice erred with respect to the award of counsel fees referenced in the interlocutory decision; and (4) that the trial justice erred in finding that Patrick was in contempt of court (and in awarding counsel fees based upon that finding).

Because the second, third, and fourth of the just-summarized issues need be addressed only if the Family Court had subject matter jurisdiction over this case, we shall turn immediately to that all-important threshold issue.

## III

## Analysis

## A

## Subject Matter Jurisdiction

## 1

## Standard of Review

We have frequently stated that "subject-matter jurisdiction is 'an indispensable ingredient of any judicial proceeding.'" Rogers v. Rogers, 18 A.3d 491, 493 (R.I. 2011) (quoting Paolino v. Paolino, 420 A.2d 830, 833 (R.I. 1980)); see also Long v. Dell, Inc., 984 A.2d 1074, 1079 (R.I. 2009). Challenges to the subject matter jurisdiction of the trial court are reviewed in a de novo manner by this Court. See Rogers, 18 A.3d at 493. Moreover, in conducting that review, we are

"not limited to the face of the pleadings." Boyer v. Bedrosian, 57 A.3d 259, 270 (R.I. 2012) ("A court may consider any evidence it deems necessary to settle the jurisdictional question." (internal quotation marks omitted)); City of Providence v. Doe, 21 A.3d 315, 319 (R.I. 2011).

## 2

## The Trial Justice's Determination of Residency

Although (for the reasons set forth hereinafter) it is our view that the Family Court did have subject matter jurisdiction over this case, we are unable to endorse the basic analytical approach employed by the trial justice in addressing the residency issue. He erroneously focused on Lori's intent[7] rather than on the more objective facts that should be scrutinized in determining a person's residency. Even though the record before us in this case permits us to affirm on other grounds the trial justice's conclusion as to Lori's residency,[8] we pause to clarify the appropriate standard for such findings.

It is clear that the determination of residency in divorce cases in this state does not depend on the intent of the plaintiff. In fact, intent is the sole element distinguishing residency from domicile—both of which are required in order for subject matter jurisdiction to lie in the Family Court. See, e.g., DeBlois v. Clark, 764 A.2d 727, 734 (R.I. 2001) ("[I]n order to

---

[7]    In rendering his decision on Patrick's motion to dismiss, the trial justice stated that the "question [was] did she intend by her time away from the State of Rhode Island to have absented herself from Rhode Island to such a degree that she is no longer a resident herein." The trial justice then noted that the court was "satisfied" that Lori "never intended to be anything other than a resident and domiciliary of Rhode Island despite the fact that she spent 172 days in southern France working on a project for a vacation home that she does, in fact, own with her current husband."

[8]    On numerous occasions, this Court has affirmed trial court rulings on grounds other than those relied upon by the trial court. See, e.g., In re Last Will and Testament of Quigley, 21 A.3d 393, 401 n.6 (R.I. 2011); Shepard v. Harleysville Worcester Insurance Co., 944 A.2d 167, 170 (R.I. 2008); Ahlburn v. Clark, 728 A.2d 449, 452 (R.I. 1999).

establish domicile, a person must have an actual [place of] abode in the state with the intention in good faith to live [t]here permanently and without any present intention of changing the home in the future." (internal quotation marks omitted)); McCarthy v. McCarthy, 45 R.I. 367, 369, 122 A. 529, 531 (1923) (recognizing that, to establish domicile, "[a]ctual residence without such intention does not suffice"). Accordingly, although the trial justice's focus on Lori's intent was misplaced, we nonetheless affirm his determination that the Family Court had subject matter jurisdiction over the divorce for the below-mentioned reasons.

**3**

**The Residency Issue**

The initial and sine qua non question which we must resolve with respect to this case is whether Lori "ha[d] resided in this state for a period of one year next before the filing of [her] complaint" for divorce from Patrick, specifically from April of 2008 to April of 2009. See G.L. 1956 § 15-5-12. The just-cited provision of the General Laws is the controlling statute with respect to the Family Court's subject matter jurisdiction over divorce actions. See Rogers, 18 A.3d at 493 (noting that "[t]he Family Court was established by the General Assembly as a court of limited jurisdiction" and further noting that "subject-matter jurisdiction with respect to petitions for divorce is governed by § 15-5-12(a)"). Section 15-5-12(a) reads, in pertinent part, as follows:

> "No complaint for divorce * * * shall be granted unless the plaintiff has been a domiciled inhabitant of this state and has resided in this state for a period of one year next before the filing of the complaint * * *."

In the divorce context, the residency requirement is separate and apart from the domicile requirement. See id. At no point does title 15 define the meaning of "resided."[9]

We have previously held that, in order to satisfy the statutory residency requirement in the divorce context, there must be on plaintiff's part "an actual and continuous residence and dwelling within this state for the prescribed period, which must immediately precede the filing of the petition." McCarthy, 45 R.I. at 369–70, 122 A. at 531; see also Doerner v. Doerner, 46 R.I. 41, 42–43, 124 A. 728, 729 (1924) ("The * * * residence required by statute is an actual residence and presence in the state for the required period."). We have further commented that "this statutory requirement is to be construed in a reasonable manner," such that "[a]n ordinary

---

[9] The absence of a statutory definition of the term "resided" that is employed in G.L. 1956 § 15-5-12(a) necessarily has resulted over the years in judicial divination of precisely what the General Assembly intended that term to mean in that statute. It is noteworthy that the related term "resident" has been legislatively defined in various ways in several other statutes unrelated to the divorce context. See, e.g., G.L. 1956 § 23-24.4-3 (defining, in the context of the Hazardous Substances Community Right to Know Act, a "Resident" as "any person whose principal domicile is located in the state"); G.L. 1956 § 20-2.2-3 (defining, in the context of recreational saltwater fishing licenses, a "Resident" as "an individual who has had his or her actual place of residence and has lived in the state of Rhode Island for a continuous period of not less than six (6) months"); G.L. 1956 § 27-2.4-2 (defining, in the context of producer licensing, a "Resident" as "a person who either resides in Rhode Island or maintains an office in Rhode Island * * * and designates Rhode Island as the residence for purposes of licensure"); G.L. 1956 § 27-34.3-5 (defining, in the context of life and health insurance guarantees, a "Resident" as "a person to whom a contractual obligation is owed and who resides in this state on the date of entry of court order * * *. A person may be a resident of only one state * * *"); G.L. 1956 § 31-1-18 (defining, in the context of motor and other vehicles, a "Resident" as a "person: (1) [w]ho owns, rents, or leases real estate * * * as his or her residence and: (i) [e]ngages in a trade, business, or profession in this state; or (ii) [e]nrolls his or her children in a school in this state for a period exceeding ninety (90) days; or (2) [w]ho is registered to vote or is eligible to register to vote under the laws of this state"); G.L. 1956 § 44-31.3-2 (defining, in the context of musical and theatrical production tax credits, a "Resident" or "Rhode Island resident" as, "for the purpose of determination of eligibility for the tax incentives provided by this chapter, an individual who is domiciled in the State of Rhode Island or who is not domiciled in this state but maintains a permanent place of abode in this state and is in this state for an aggregate of more than one hundred eighty-three (183) days of the taxable year * * *"); G.L. 1956 § 40-5.2-8 (defining, in the context of the Rhode Island Works Program, a "Resident" as "a person who maintains residence by his or her continuous physical presence in the state").

temporary absence from the state may properly be held to be no sufficient interruption of the legal continuity of actual residence." Doerner, 46 R.I. at 43, 124 A. at 729. In addition, a finding that a plaintiff was a domiciled inhabitant of the state and had resided within the state for the requisite period of time is a finding of fact. See Root v. Root, 57 R.I. 436, 440, 190 A. 450, 452 (1937). It is clear that "such a finding should not be disturbed by this [C]ourt, unless it clearly fails to do justice between the parties, or is clearly erroneous." Id. at 441, 190 A. at 452.

In McCarthy, this Court considered whether or not the plaintiff, who had filed for divorce in Rhode Island, had satisfied the residency requirement. In that case, when the plaintiff was absent from Rhode Island, she was located in New York City or "on the road" for the purpose of pursuing her profession. See McCarthy, 45 R.I. at 368, 122 A. at 530. She visited Rhode Island on weekends and had "lived" in Rhode Island in one or the other of two hotels, "where her mail [had] been sent, and from there [had] been forwarded to her * * *." Id. In addition, she spent between five and eight weeks in the summer in Rhode Island for vacation. See id. This Court determined that the plaintiff's presence in the state was not sufficient to "maintain her residence for the required length of time." Id. at 370, 122 A. at 531. The Court noted in McCarthy that the petitioner "actually lived within the state only a relatively small part of each year"; it concluded that her justified absences did "not excuse the failure to fulfill the statutory requirement of actual and continuous residence." Id. at 371, 122 A. at 531.

It is also noteworthy, however, that this Court in McCarthy specifically stated that "[n]ot every departure and absence from the state is to be held as a legal interruption of the continuity of residence required by the statute." McCarthy, 45 R.I. at 370–71, 122 A. at 531. The Court went on to state: "The legal effect of such absence in each case is to be considered in view of all of the facts." Id. at 371, 122 A. at 531.

In Root, this Court considered whether or not the plaintiff seeking a divorce in Rhode Island was a domiciled inhabitant of the state. See Root, 57 R.I. at 437, 190 A. at 451. In making its determination, the Court summarized the evidence before it, indicating that the plaintiff had rented a room in Providence in 1932 (the petition for divorce was filed in 1935) for the stated purpose of becoming a domiciled inhabitant in order to procure a divorce. Id. at 439, 190 A. at 451. The plaintiff stayed in Providence for an average of three or four nights a week, and he remained in Massachusetts at his sister's home for an average of one to two nights a week. Id. He additionally spent a night or two per week in a second apartment in Massachusetts. Id. The Court noted that the plaintiff's room in Providence "was comfortably furnished and he kept there his clothing and other personal effects"; that he "received mail there all the time"; and that he "registered his [car] in Rhode Island and afterwards registered for voting in Providence." Id. at 439, 190 A. at 452. In addition, the Court noted that the plaintiff had paid taxes in Rhode Island and had lived in Providence for about eight years prior to the separation from his wife. Id. The Court also noted that the plaintiff kept his bank accounts in Boston. Id. at 440, 190 A. at 452. The Court affirmed the finding as to domicile and residence. Id. at 441, 190 A. at 452.

Although the issue in Root was domicile rather than residence, it should be recalled that the difference between residence and domicile is merely the additional element of intent. See DeBlois, 764 A.2d at 734. Therefore, the Court's reasoning as to the weight to be accorded to the trial justice's finding of fact is equally applicable to determinations of both issues. Accordingly, we consider the language from our opinion in Root to be fully applicable to the trial justice's finding of fact concerning the residency issue in the case at bar:

> "[The trial justice's decision] was based almost entirely on testimony given before the trial justice, where he had the great

- 20 -

advantage of hearing and seeing the witnesses. The rule is well established that such a finding should not be disturbed by this [C]ourt, unless it clearly fails to do justice between the parties, or is clearly erroneous." Root, 57 R.I. at 440–41, 190 A. at 452.

After a careful review of the record, it is our opinion that there was enough evidence in the record from which the trial justice could determine that Lori had met the residency requirement; we are persuaded that his decision in that regard did not "clearly fail[] to do justice between the parties" nor was it "clearly erroneous." See Root, 57 R.I. at 441, 190 A. at 452; see also McCarthy, 45 R.I. at 370–71, 122 A. at 531.

Although we have never delineated specific factors or criteria that would fulfill the "resided in this state" requirement set forth in § 15-5-12(a), it is clear from the above-summarized opinions that this Court has focused on certain factual considerations as being relevant to the residency determination—such as the locations of the following: receipt of mail, voter registration, physical address, the payment of rent, bank accounts, vehicle registration, storage of clothing and personal effects, payment of taxes, and prior history of residence. See Root, 57 R.I. at 439, 190 A. at 451–52; McCarthy, 45 R.I. at 368, 122 A. at 530–31.

Similar to the situations in Root and McCarthy, the record in this case contains evidence with respect to the majority of the factual considerations that this Court has historically alluded to when analyzing residency. Most critical to our decision, the record includes many of the above-mentioned facts (and, notably, those facts were not contested by Patrick). Lori testified that her "permanent residence has always been in West Warwick," but that, during the critical one year period before she filed her complaint for divorce, she had been living in France for 172 days working as an interior designer and project manager for the renovation of the parties' vacation home. The record further reflects that Lori was present in Rhode Island beginning in November of 2008 until the date of the filing for divorce on April 22, 2009. Lori testified that

she filed Rhode Island state tax returns for 2007 and 2008 and that she was registered to vote in the state. The record, however, is silent as to where she received her mail and whether or to where her mail was forwarded.

The record indicates that Lori had a physical address in Rhode Island, even though she did not have a lease and did not pay rent. We also note that, according to her testimony at trial, Lori owned a vehicle in this state. She additionally testified that she kept her jewelry and certain clothing items at the West Warwick address and also that she maintained certain paintings and furniture at that address. Her uncontested testimony touches on virtually all of the facts upon which this Court has focused for decades when dealing with the residency or domicile issue.

Acknowledging that the ease and necessity of travel have greatly increased since the issuance of the McCarthy and Root decisions several decades ago, we are of the view that Lori had resided in Rhode Island for the year prior to her divorce filing sufficient to meet the subject matter jurisdiction requirements of the pertinent statute.

**B**

**Rehabilitative Alimony**

The grant of alimony is authorized by statute. See § 15-5-16(a). That statute states that its purpose "is designed to provide support for a spouse for a reasonable length of time to enable the recipient to become financially independent and self-sufficient." Section 15-5-16(c)(2). In addition, we have stated that alimony "is a rehabilitative tool intended to provide temporary support * * *, and is based purely on need." Thompson v. Thompson, 973 A.2d 499, 512 (R.I. 2009) (internal quotation marks omitted). Moreover, we have noted that the nature of alimony "is prospective, not retroactive." See id.

In fashioning an alimony award, the trial justice must consider the following statutory factors:

> "(i) The length of the marriage;
> "(ii) The conduct of the parties during the marriage;
> "(iii) The health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties; and
> "(iv) The state and the liabilities and needs of each of the parties."
> Section 15-5-16(b)(1)(i)–(iv).[10]

We review an award of alimony by a trial justice pursuant to an abuse of discretion standard. See Ruffel v. Ruffel, 900 A.2d 1178, 1193 (R.I. 2006). Additionally, if the trial justice "did not overlook or misconceive material evidence, and if he considered all the requisite statutory elements" set forth in § 15-5-16, we will not disturb the discretionary award of alimony. See Thompson v. Thompson, 642 A.2d 1160, 1162 (R.I. 1994). We have also required, in accordance with the statute, that "[t]he assignment of property, if any, to be made shall precede

---

[10] The alimony statute that is partially quoted in the text also requires that the court consider the following additional factors:

> "(ii) The extent to which either party is unable to support herself or himself adequately with consideration given to:
> "(A) The extent to which a party was absent from employment while fulfilling homemaking responsibilities, and the extent to which any education, skills, or experience of that party have become outmoded and his or her earning capacity diminished;
> "(B) The time and expense required for the supported spouse to acquire the appropriate education or training to develop marketable skills and find appropriate employment;
> "(C) The probability, given a party's age and skills, of completing education or training and becoming self-supporting;
> "(D) The standard of living during the marriage;
> "(E) The opportunity of either party for future acquisition of capital assets and income;
> "(F) The ability to pay of the supporting spouse, taking into account the supporting spouse's earning capacity, earned and unearned income, assets, debts, and standard of living;
> "(G) Any other factor which the court expressly finds to be just and proper." Section 15-5-16(b)(2).

- 23 -

the award of alimony, since the needs of each party will be affected by the assignment." Koutroumanos v. Tzeremes, 865 A.2d 1091, 1100 (R.I. 2005) (quoting § 15-5-16.1(c)).

It is clear from our review of the record that the trial justice considered all of the required statutory factors. See Thompson, 642 A.2d at 1164. He first dealt with the division of marital property and personalty, and he then determined that there should be an award of alimony in the amount that he deemed appropriate—limiting the period of alimony to three years. In doing so, he considered (without explicitly referencing each statutory factor) the amount of time that the parties had been married; the conclusion (based on the non-sworn response to the Request for Admissions) that Patrick had not been faithful to Lori during the marriage; and the contributions from the assets of each party towards the purchase and development of the property in France. The trial justice additionally considered the couple's lifestyle; the fact that Lori had ceased working in her profession; and the state of their finances at the time of the divorce. In addition, he considered the income of Patrick and his ability to acquire future income. The trial justice also considered Lori's age and the state of her health as well as her ability to work, even though she had not been employed during the marriage. Based upon these factors, the trial justice found that Lori was "in need of rehabilitative alimony for a period of three years." The trial justice reviewed Lori's request and her estimated expenses, which Lori contended amounted to $1,789.27 per week. The trial justice ultimately awarded Lori $1,250 per week after finding that Patrick had the ability to pay that amount.

We note that the trial justice reviewed all of the statutory factors before concluding that rehabilitative alimony (albeit at a level significantly less than Lori had requested) was warranted. After carefully reviewing the record, we perceive no basis for ruling that the trial justice abused his discretion in awarding rehabilitative alimony in this case or in determining the amount and

duration of such alimony. See Ruffel, 900 A.2d at 1193. Accordingly, we hold that the trial justice did not err in awarding Lori rehabilitative alimony, and we affirm his decision in that regard.

**C**

**Counsel Fees**

As is the case with respect to alimony, the award of counsel fees in a divorce action is governed by § 15-5-16. See Cok v. Cok, 479 A.2d 1184, 1189 (R.I. 1984). The purpose of allowing a trial justice to award counsel fees "is to allow a spouse to defend in a divorce action." Centazzo v. Centazzo, 556 A.2d 560, 562 (R.I. 1989). The issue of whether or not to award counsel fees in a particular case is confided to the sound discretion of the trial justice, and we review a trial justice's ruling with respect to such fees under the abuse of discretion standard. See id.

This Court is evenly divided with respect to the Family Court's judgment concerning the award of counsel fees. Accordingly, the Family Court judgment is affirmed by an evenly divided court. See Cahill v. Morrow, 985 A.2d 1016, 1017 (R.I. 2009) (mem.).

**D**

**The Contempt Finding**

Finally, Patrick challenges two orders and a resulting judgment that involve Patrick's actions with respect to pursuing divorce proceedings in France. We have noted that "[a] party who disregards a valid court order in favor of his own notion of justice should be adjudged in contempt." Pontbriand v. Pontbriand, 622 A.2d 482, 486 (R.I. 1993); see generally Walker v. City of Birmingham, 388 U.S. 307 (1967); United States v. United Mine Workers of America, 330 U.S. 258 (1947); Howat v. Kansas, 258 U.S. 181 (1922); Borozny v. Paine, 122 R.I. 701,

- 25 -

411 A.2d 304 (1980). We have held that a "finding of contempt is within the sound discretion of the [trial] justice." Tworog v. Tworog, 45 A.3d 1194, 1198 (R.I. 2012) (internal quotation marks omitted); see also Ayriyan v. Ayriyan, 994 A.2d 1207, 1215 (R.I. 2010). When we review "an adjudgment of contempt, the decision of the trial justice is given great deference." Pontbriand, 622 A.2d at 486. We will not overturn a trial justice's finding of contempt absent clear error or an abuse of discretion. See Tworog, 45 A.3d at 1198; see also Williams v. Williams, 429 A.2d 450, 454 (R.I. 1981).

The contempt finding is related to Lori's emergency motion that was filed on February 22, 2010 and heard on February 24, 2010. After that hearing (at the conclusion of which the trial justice orally ordered defendant not to proceed with divorce proceedings elsewhere), an order entered enjoining Patrick from proceeding with a divorce in France or elsewhere. The record[11] before this Court discloses that Patrick, in defiance of the clear order of the Family Court, initiated divorce proceedings in France on March 21, 2010.[12]

Lori filed a motion to adjudge defendant in contempt of that order; at a hearing on October 4, 2010, the trial justice found Patrick in contempt of his earlier order. As a sanction for the contempt, the trial justice ruled that Patrick should pay Lori's reasonable counsel fees with respect to the contempt proceedings. At a separate hearing on November 29, 2010, the trial justice heard testimony regarding the fees requested by Lori's counsel for the contempt

---

[11] Patrick's brief to this Court explicitly states: "The necessary informal preliminaries having been completed in France, on March 21, 2010 defendant filed a formal petition for divorce in the Regional Court of Avignon."

[12] While these consolidated appeals were pending, counsel for Patrick filed (without argument or other comment) with this Court what is purported to be a final divorce decree issued by a French court. Patrick did not contend that that purported decree had any bearing on the issues before us. We need not address the validity, if any, of the French decree in this opinion. Cf. Jewell v. Jewell, 751 A.2d 735 (R.I. 2000).

proceedings, and an order and a judgment entered reducing those fees to $1,437.50 to be paid by Patrick as a contribution towards those counsel fees. On appeal, Patrick contends that the order enjoining him from proceeding with a foreign divorce "merge[d]" into the interlocutory decision pending entry of final judgment of September 15, 2010, and it was therefore no longer in effect at the time when Lori's motion to adjudge him in contempt was filed.[13]

We need not (and therefore shall not) reach Patrick's contention that, because the interlocutory decision does not mention the 2010 injunction, said injunction thereby ceased to be in effect—because it is clear that the contemptuous conduct at issue here (namely, Patrick's March 21, 2010 filing of divorce proceedings in France) occurred prior to the entry of the interlocutory decision pending entry of final judgment. It is equally clear that Patrick's conduct explicitly violated the terms of the Family Court's order enjoining him from proceeding with a divorce in a foreign jurisdiction. We are hard-pressed to envision a clearer or more brazen case of contemptuous conduct, and we note that it is consistent with Patrick's course of conduct throughout the proceedings in the Family Court. Accordingly, we readily hold that the trial justice did not abuse his discretion in finding Patrick in contempt; we perceive absolutely no basis for disturbing the contempt finding or the sanctions imposed. See Tworog, 45 A.3d at 1200; Ayriyan, 994 A.2d at 1216.

---

[13] On the substantive level, Patrick contends that the equities did not weigh in favor of the issuance of the order enjoining him from seeking a divorce in another jurisdiction.

We do not reach Patrick's substantive arguments with respect to the propriety of the injunction because, this Court having determined that the Family Court had jurisdiction over this divorce action, Patrick is precluded from challenging the March 16, 2010 order. See Menard v. Woonsocket Teachers' Guild-AFT 951, 117 R.I. 121, 129, 363 A.2d 1349, 1354 (1976) ("It has long been recognized that the propriety of a mandate contained in an order decreed by a court having competent jurisdiction cannot be questioned. * * * Rather the order must be complied with until it has been modified or dissolved. * * * Consequently, it is no defense in a subsequent contempt proceeding that a court issuing a preliminary injunction erred in its judgment and compliance was, therefore, unnecessary."); see also Boyls v. Boyls, 463 A.2d 1307, 1308–09 (R.I. 1983).

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the several orders and judgments of the Family Court from which appeals were taken. The record may be returned to that tribunal.

Justice Flaherty did not participate.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Lori Noel Meyer v. Patrick W. Meyer.

**CASE NO:**      No. 2011-14-Appeal.
No. 2011-15-Appeal.
No. 2011-17-Appeal.
No. 2011-18-Appeal.
(K 09-243)

**COURT:**      Supreme Court

**DATE OPINION FILED:**      June 26, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice William P. Robinson

**SOURCE OF APPEAL:**      Kent County Family Court

**JUDGE FROM LOWER COURT**:

      Associate Justice Stephen J. Capineri

**ATTORNEYS ON APPEAL:**

      For Plaintiff:  John D. Lynch, Esq.

      For Defendant:  John A. MacFadyen III, Esq.